UNITED STATES of America, Appellee,

v.

Victor SANTARPIO, a/k/a "Lefty", Defendant, Appellant.*

No. 76–1178.

United States Court of Appeals, First Circuit.

Argued Dec. 7, 1976.

Decided June 30, 1977.

* Consolidated with the following Defendants-Appellants; Joseph S. Mastrullo, 76–1179; Thomas Hurley, 76–1180; Charles Palazzolo, 76–1181; Philip Cali, 76–1182; Andrew Schepici, 76–1183; Richard Smith, 76–1198; Harry F. Hamperian, 76–1199; Albert F. Bruun, 76–1200; and John Bradanese, 76–1201.

Marting G. Weinberg, Joseph J. Balliro and Gerald Alch, Boston, Mass., with whom William J. Cintolo, Oteri & Weinberg, Joan C. Schmidt, Boston, Mass., Jeanne Baker, David J. Fine and Rosenberg, Baker & Fine, Cambridge, Mass., were on brief, for appellants in Nos. 76–1179, 76–1181, 76–1183 and 76–1201.

John J. Sylvester, Boston, Mass., by appointment of the court, for appellant in No. 76–1182.

Alan R. Hoffman, Boston, Mass., by appointment of the court, with whom Kaplan, Latti & Flannery, Boston, Mass., was on brief, for appellant in No. 76–1178.

Francis J. O'Rourke, Boston, Mass., by appointment of the court, and Maloney, Williams & Baer, Boston, Mass., for appellant in No. 76–1200.

William J. Carr, Boston, Mass., appearing for appellant in No. 76–1199.

Eugene X. Giroux, Boston, Mass., appearing for appellant in No. 76–1198.

Robert Y. Murray, Boston, Mass., by appointment of the court, and Moulton & Looney, Boston, Mass., appearing for appellant in No. 76–1180.

Frederick Eisenbud, Atty., Dept. of Justice, Washington, D. C., with whom James N. Gabriel, U. S. Atty., Boston, Mass., and William G. Otis, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

■ The ten appellants were named in four indictments[1] which charged them, and others, with operating an illegal gambling business and with conspiracy to commit that offense in violation of 18 U.S.C. §§ 1955 and 2. Following a jury-waived trial, all were convicted on one count of conducting an illegal gambling business.

The Government's primary evidence consisted of stipulations of fact including transcripts of court authorized wire interceptions of telephone conversations conducted between December 19, 1974 and February 3, 1975. An FBI bookmaking expert through stipulation and testimony explained how a bookmaking business works and gave his opinion based on the other evidence that each of the defendants was part of one gambling enterprise. The Government also introduced gambling paraphernalia seized in warrant-authorized searches of several locations used in defendants' bookmaking operations. Seen in the light most favorable to the Government, this evidence revealed a gambling business unified by the exchange of line and other gambling information and layoff bets between bookmakers. Briefly the stipulated facts were as follows.

Thomas Hurley owned a bookmaking business the central office of which was managed by Victor Santarpio assisted by an office worker, Albert Bruun. Santarpio received and accepted layoff wagers on sports from Andrew Schepici, Joseph Mastrullo, Philip Cali, Richard Smith and Harry Hamperian. He also received and accepted layoff wagers on horses from Schepici. Santarpio exchanged line information on sporting events with Schepici and Mastrullo and received from Schepici line information which had been received from Charles Palazzolo. John Brandanese was an office worker for Mastrullo.

Appellants, either in combination or individually, make numerous assignments of error. They challenge the indictments, the legality of the wiretaps, the sufficiency of the evidence, and, in one case, a condition of probation that was imposed. Because all challenge the legality of the three wiretap orders, we address that question first.

I

■ The wiretap orders were issued on December 4, 1974, December 19, 1974 and January 17, 1975, each on the basis of an application by Special Attorney Jeremiah T. O'Sullivan[2] and an affidavit submitted by FBI Agent Thomas J. Daly. The telephone company was unable to effect the first taps and no evidence was obtained from the December 4 order. The information gained from the two other wiretaps led to search

1. The indictments charged appellants with having "conducted, managed, supervised, owned, and directed an illegal gambling business . . (1) having a gross revenue of two thousand dollars ($2,000) on a single day, (2) remaining in substantially continuous operation in excess of thirty (30) days, (3) involving five persons in its conduct, financing, management, supervision, direction, and ownership, and (4) being in violation of Massachusetts General Laws, Chapter 271, Sections 7, 17 and 17(a) [17A]", all in violation of 18 U.S.C. §§ 1955 and 2. Four appellants Cali, Hamperian, Smith and Santarpio, argue that the indictments are duplicitous and should have been dismissed because each of the cited sections of Mass.Gen. Laws c. 271 includes numerous separate state crimes and appellants were thus deprived of notice of what allegations they had to prepare to meet. The argument is without merit. The indictments adequately set out the elements of the federal crime; appellants were not misled nor prejudiced. Fed.R.Crim.P. 7(c)(3). *See*

*United States v. Morrison*, 531 F.2d 1089, 1094 (1st Cir. 1976). We need not decide whether it would have been enough, as the Government suggests, for the indictment to state only that the operation was being carried out "in violation of state law". Cf. *Babb v. United States*, 218 F.2d 538, 540 (5th Cir. 1955).

2. There is no merit in appellants' argument that the indictments should have been dismissed because they were not signed by the United States Attorney. Mr. O'Sullivan is "an attorney for the government" as required by Fed.R. Crim.P. 7(c). *See United States v. Morrison*, 531 F.2d 1089 (1st Cir. 1976). Insofar as his sole signature may have failed to comply with the Attorney General's Guidelines Governing Interrelationships Between Strike Forces and U.S. Attorney's Offices (reproduced in *In re Persico*, 522 F.2d 41, 70 (2d Cir. 1975)) it is only of concern, if at all, to the Justice Department; appellants may not raise the issue.

warrants and the seizure of bookmaking paraphernalia. The district court denied appellants' motions to suppress the intercepted communications and derivative evidence.

Appellants assert that the applications were defective because they failed to demonstrate the inadequacy of normal investigative procedures, 18 U.S.C. § 2518(1)(c), and failed to establish probable cause that five or more persons were involved in an illegal gambling business, 18 U.S.C. § 2518(3)(a).[3] Appellants further argue that the identity of three anonymous informants should have been revealed to the defendants or, alternatively, to the court *in camera.*

■ In *United States v. Scibelli,* 549 F.2d 222, 226 (1st Cir. 1977), *cert. denied* 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977), we said that our role on review was "not to make a *de novo* determination of sufficiency . . . but to decide if the facts set forth in the application were minimally adequate to support the determination made." We further observed that section 2518(1)(c) was not designed to force the Government to exhaust all other investigative procedures before resorting to wiretapping but rather serves " 'to assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime'." *Id., quoting United States v. Kahn,* 415 U.S. 143, 153 n.12, 94 S.Ct. 977, 983, 39 L.Ed.2d 225 (1974). We have reviewed the applications and affidavits which led to the wiretaps in this case and, reading them in "a practical and commonsense manner", *United States v. Scibelli, supra,* 549 F.2d at 226, we cannot say that the district court erred in finding them to comply with the requirement of "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous", 18 U.S.C. § 2518(1)(c). The applications show that they were preceded by a three month investigation which included surveillance and the gathering of information from informants. None of the informants was willing to testify for the Government. Agent Daly explained that although a pattern of conduct which reasonably suggested an illegal gambling business had been established, this would not be sufficient to convict under 18 U.S.C. § 1955. In deciding if other techniques were or were not promising, the court was entitled to take account of the fact that the alleged crime was essentially a telephone crime. *See United States v. Scibelli, supra,* 549 F.2d at 227; *United States v. Steinberg,* 525 F.2d 1126, 1130 (2d Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976); *In re Dunn,* 507 F.2d 195, 197 (1st Cir. 1974).

Appellants laboriously analyze the contents of the first affidavit suspect by suspect and conclude that there was insufficient probable cause established with respect to four of the seven named suspects. Because the federal crime of conducting a gambling business requires that five or more individuals be involved, this insufficiency is said to be fatal to the affidavit. The second application is similarly dissected and is additionally attacked as insufficient because, it is argued, the requirements of 18 U.S.C. § 2518(1)(e) should have been, but were not met, and the demonstration of probable cause was not fresh. No direct attack is made on the third application which was largely based on evidence derived from implementation of the second wiretap order. It is argued, however, that if the second application violated the stat-

---

**3.** Another argument made by Santarpio and adopted by Bruun, Hamperian and Smith, is quickly disposed of. Since oral argument was heard in this case the Supreme Court has stated that the

> "provisions for mandatory and discretionary inventory notice [in 18 U.S.C. § 2518(8)(d)] . . . . satisfy constitutional requirements. See *Katz v. United States,* 389 U.S. 347, 355–

56 [88 S.Ct. 507, 513, 19 L.Ed.2d 576] and n.16 (1967); *Berger v. New York,* 388 U.S. 41, 60 [87 S.Ct. 1873, 1884, 18 L.Ed.2d 1040] (1967)."

*United States v. Donovan,* 429 U.S. 413, 429 n.19, 97 S.Ct. 658, 669, 50 L.Ed.2d 652 (1977). *See generally United States v. Harrigan,* 557 F.2d 879 (1st Cir. 1977).

ute, information therefrom must be suppressed, including the derivative evidence resulting from the third tap.

The short answer to much of the foregoing is that it calls for reading the affidavits in a hypertechnical manner. They should not be so read. *See United States v. Ventresca*, 380 U.S. 102, 108–09, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965). A commonsense interpretation reveals that there was probable cause as to each of the persons named in each of the wiretap applications. Indeed, one reaches the same conclusion even if the affidavits are read in the refined manner urged. We find, moreover, no fatal absence of reliability in the statements made by gamblers to the informants. These admissions against penal interest by confessed bookmakers concerning gambling operations of which they were a part were certainly entitled to weight. *See United States v. Harris*, 403 U.S. 573, 583–84, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (plurality opinion); *United States v. Bowser*, 532 F.2d 1318, 1321 (9th Cir. 1976); *United States v. Carmichael*, 489 F.2d 983, 986–87 (7th Cir. 1973) (en banc); Fed.R.Evid. 804(b)(3). Reasonably viewed, we find none of the statements to be "hopelessly vague", as alleged, nor insufficiently fresh. We reject the contention that collecting debts from delinquent accounts and settling with bettors does not show one to be an integral part of the conducting of business within section 1955. *See, e. g., United States v. Sacco*, 491 F.2d 995, 1002–03 (9th Cir. 1974); *United States v. Smaldone*, 485 F.2d 1333, 1351 (10th Cir. 1973), *cert. denied*, 416 U.S. 936, 94 S.Ct. 1934, 40 L.Ed.2d 286 (1974). Finally, the second application was not an extension of the first but a new request

covering phones different from those sought to be tapped pursuant to the first order. As such it complied with the requirements of 18 U.S.C. § 2518(1)(e). *See United States v. Florea*, 541 F.2d 568, 576 (6th Cir. 1976), *cert. denied*, 430 U.S. 935, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977).

The district court had no reason to require that the informants be identified. There was probable cause to issue the wiretap orders and there were no material misrepresentations in the affidavits;[4] moreover, the district court heard the testimony of Agent Daly at the hearing on the motions to suppress and apparently was satisfied that the information received from the informers was reliable and the informants credible. *See McCray v. Illinois*, 386 U.S. 300, 304, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), *quoting Aguilar v. Texas*, 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Not only was there no requirement that the informants' identities be revealed to appellants, *see McCray v. Illinois, supra*, 386 U.S. at 311–12 & n.11, 87 S.Ct. 1056, but the court had no reason based either on Agent Daly's testimony or on the affidavits themselves to question the reliability of the informants. *In camera* identification was thus not required and the cases cited by appellants, *United States v. Freund*, 525 F.2d 873 (5th Cir. 1976); *United States v. Anderson*, 509 F.2d 724 (9th Cir. 1974), *cert. denied*, 420 U.S. 910, 95 S.Ct. 831, 42 L.Ed.2d 840 (1975); *United States v. Hurse*, 453 F.2d 128 (8th Cir. 1972), *cert. denied*, 414 U.S. 908, 94 S.Ct. 245, 38 L.Ed.2d 146 (1973), are simply inapposite.

Appellants' remaining arguments that the wiretap evidence should have been suppressed are similarly without merit.

4. We find no merit in appellants' contention that Agent Daly's affidavits were infected by serious misrepresentations. Assuming that Agent Daly knew that informant number three was unwilling to testify but not precisely why, and that to this extent he misspoke when he said that none of the informants was willing to testify "for fear of his personal safety", the error did not compel a finding of bad faith, nor was it of major materiality. As the Government was not obliged to pursue with its informants the possibility of protective custody,

*United States v. Scibelli*, 549 F.2d 222, 228 n.5 (1st Cir. 1977), *cert. denied*, 431 U.S. 960, 97 S.Ct. 2687, 53 L.Ed.2d 278 (1977), its failure to do so did not undermine the representations in the affidavit.

Similarly there is no merit in the claim that the affidavits were fatally undermined because alternative investigative measures were not exhaustive enough. The statute does not require that the Government try every possible technique before resorting to wiretapping. *See infra.*

## II

Palazzolo, Cali and Hamperian argue that the Government's evidence was insufficient to establish that each of them conducted an illegal gambling business in violation of 18 U.S.C. § 1955.

■ In reviewing these assertions, we consider evidence in a light most favorable to the Government, *United States v. Doran*, 483 F.2d 369, 372 (1st Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1612, 40 L.Ed.2d 111 (1974).

■ We start with Palazzolo. Intercepted during the third wiretap, he contends that his laying off of bets with Schepici was not enough to establish that he was a participant in the larger Santarpio operation.[5] He argues that the evidence shows that Palazzolo disseminated line information to Schepici only twice, and that the amount of business Schepici laid off to Palazzolo was "miniscule". In fact, Palazzolo furnished to, and accepted from, Schepici layoff wagers on numbers and horses, and, on at least one occasion, Schepici then laid off to Santarpio bets he had received from Palazzolo. Palazzolo discussed with Schepici settlement of his account and, on a number of occasions, furnished line information on sports to Schepici who, on one occasion, in turn furnished the line to Santarpio. It was not necessary to show that Palazzolo knew that he was aiding Santarpio and others besides Schepici. *See United States v. DiMuro*, 540 F.2d 503, 508 n.5 (1st Cir. 1976), *cert. denied*, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977), *citing United*

*States v. Brick*, 502 F.2d 219, 224 (8th Cir. 1974).

■ The stipulated evidence against Cali was that he received line information on sporting events from, furnished layoff wagers on sports and horses to, and discussed the settlement of his account with, Santarpio. Furthermore, Cali discussed with Mastrullo the fact that his, Cali's, "makeup" on sports to Santarpio (that is, the amount owed) was $25,000. Cali contends that the evidence simply does not show a sufficiently regular and consistent type of connection with Santarpio to fuse Cali into the overall operation. The fact, however, that Cali gave line information to, and accepted layoff bets from Santarpio, is basis enough for the conviction; it could be determined that Cali's participation was necessary and useful to Santarpio's gambling enterprise. *See United States v. DiMuro, supra*, 540 F.2d at 508.

■ The stipulated evidence against Hamperian was that he furnished layoff wagers on numbers to Santarpio and Bruun and discussed the settlement of his account. on numbers, horses and sports with Santarpio. He also discussed with Santarpio his "commission and his pay-off of 'hits' on numbers to customers of the business" and his reimbursement by Thomas Hurley of monies paid out. The Government's expert concluded from this that Hamperian was part of the unified gambling business involving the other defendants. To be sure, he did not describe and explain the relevancy of the factors upon which he rested his

---

**5.** During the second set of wiretaps mention was made in the course of an intercepted conversation of "Freestone". Agent Daly, in his affidavit in support of the third set of taps, stated that he knew "Freestone" to be Palazzollo's nickname. Palazzollo was, however, not named as one the Government had probable cause to believe to be committing the offenses for which the second tap was sought, *see* 18 U.S.C. § 2518(1)(b)(iv), although he was subsequently intercepted during the third set of wiretaps. While not arguing that the failure to identify him was an effort to mislead the district court as to whether there was probable cause to tap, Palazzolo urges that the Government's purported failure to comply with section

2518(1)(b)(iv) should lead to the suppression of the evidence against him.

It is true "that a wiretap application must name an individual if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's conversations over the target phone." *United States v. Donovan*, 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977), but, where, as here, "the application provided sufficient information to enable the issuing judge to determine that the statutory preconditions were satisfied", *id.* at 436, 97 S.Ct. at 672, the interceptions are not unlawful and the evidence will not be suppressed. *Id.* at 439, 97 S.Ct. 658.

opinion; on the other hand, Hamperian chose not to cross-examine the expert, although offered the opportunity. On cross-examination, Hamperian could have discovered the basis for the ultimate opinion, and attempted to show its inadequacy. Except for reserving an objection to the characterization of his bets as layoff wagers rather than personal bets, Hamperian did nothing to cast doubt on the validity of the opinion, *see* Fed.R.Evid. 705.[6] Under the circumstances, the court was entitled to credit the expert's conclusion. Hamperian's contention that he did not know the identity of Santarpio and the others does not bear on the sufficiency of the evidence necessary to convict Hamperian under section 1955. *See United States v. DiMuro, supra,* 540 F.2d at 508 n.5.

### III

Hamperian was sentenced to six months probation "with special conditions of probation that defendant pay a fine of $1500 and pay attorney fees during the probationary period at a rate to be determined by the probation department." Hamperian's trial counsel was court appointed, and he contends that the special condition requiring repayment of attorney's fees exceeded the court's powers.

The district court was entitled to place Hamperian on probation "upon such terms and conditions as the court deems best" and it could condition probation on "a fine in one or several sums." 18 U.S.C. § 3651. That authority was sufficient to embrace this sort of condition which, if Hamperian is not indigent, might be thought to bear " 'a reasonable relationship to the treatment of the accused and the protection of the public' ", *see, e. g., United States v. Pastore,* 537 F.2d 675, 681 (2d Cir. 1976), *quoting United States v. Alarik,* 439 F.2d 1349, 1351 (8th Cir. 1971). However, the condition cannot be enforced so as to conflict with Hamperian's sixth amendment

rights; if Hamperian is unable to pay the fees, revocation of probation for nonpayment would be patently unconstitutional. *See Tate v. Short,* 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois,* 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970).

In *Fuller v. Oregon,* 417 U.S. 40, 94 S.Ct. 2116, 40 L.Ed.2d 642 (1974), the Supreme Court upheld a state sentence in which the defendant was placed on probation conditioned, *inter alia,* on his payment of legal fees. The Supreme Court found that under Oregon's recoupment statute there would be adequate safeguards for indigents. Recoupment was necessary only when a party was able to pay or where payment would not constitute manifest hardship. *Id.* at 53, 94 S.Ct. 2116. Revocation of probation for failure to pay would conform to these standards, the Court reasoned, and thus would not impermissibly discriminate on the basis of wealth, there being no constitutional prohibition against imprisonment for nonpayment of a fine by one who has the necessary financial means. *Id.* at 53 n.12, 94 S.Ct. 2116, *quoting Tate v. Short, supra,* 401 U.S. at 400, 91 S.Ct. 668.

The federal recoupment statute, 18 U.S.C. § 3006A(c) and (f), provides that whenever a magistrate or court finds that funds are available for payment from or on behalf of a person furnished representation, it may, "as the interests of justice may dictate", direct payment to the appropriate parties. Payment, however, may not be directed without a finding that the funds are available. *See United States v. Bursey,* 515 F.2d 1228, 1236 (5th Cir. 1975). *See generally United States v. Kelly,* 467 F.2d 262, 266 (7th Cir. 1972), *cert. denied,* 411 U.S. 933, 93 S.Ct. 1905, 36 L.Ed.2d 393, *rehearing denied,* 412 U.S. 923, 93 S.Ct. 2738, 37 L.Ed.2d 151 (1973). So long as it is understood that the special condition of probation may only be enforced with proper regard to the question of Hamperian's abili-

---

**6.** Rule 705 adopts the recent trend away from use of the hypothetical question. Notes of Advisory Committee on Proposed Rules, 28 U.S.C. Rule 705; *see* McCormick's Handbook of the law of Evidence § 14 at 31 and § 16 at 37 (2d ed. 1972). Rule 705 was in force at the time of appellants' trial in March 1976.

ty to pay, and not otherwise, we see no difficulty. *Cf. Fuller v. Oregon, supra,* 417 U.S. at 53 n.12, 94 S.Ct. 2116; *Tate v. Short, supra. See also* ABA Standards Relating to Probation § 3.2(d) (Approved Draft 1970). Hamperian makes no claim on appeal that he is unable to pay; if that is the case he should address himself in the first instance to the district court. *See generally United States v. Villarin Gerena,* 553 F.2d 723, 727 n.10 (1st Cir. 1977).

*Affirmed.*