UNITED STATES of America,
Plaintiff–Appellee,

v.

Ali Erdogan GURTUNCA, a/k/a "Ali
Turk", Defendant–Appellant.

No. 86–2891.

United States Court of Appeals,
Seventh Circuit.

Argued March 31, 1987.

Decided Dec. 16, 1987.

Robert E. Meldman, Meldman, Case &
Weine, Ltd., Milwaukee, Wis., for defend-
ant-appellant.

Nathan A. Fishbach, Asst. U.S. Atty.,
Patricia A. Gorence, Milwaukee, Wis., for
plaintiff-appellee.

Before RIPPLE and MANION,
Circuit Judges, and ESCHBACH,
Senior Circuit Judge.

MANION, Circuit Judge.

Ali Erdogan Gurtunca, also known as Ali
Turk, worked during the years 1978–1981
as a self-employed consultant-loan broker.
Gurtunca would tell potential clients that
he had connections with foreign sources
(usually Middle Eastern) who had large
amounts of money available to loan at low
interest rates. Gurtunca would tell the
clients that before he could arrange a loan,
the client would have to pay him in advance
to cover items such as fees and expenses.
Gurtunca's "services" did not come cheaply
—his daily charges generally ranged from
$400 to $1,000.

A lot of people paid Gurtunca a lot of money in hopes of obtaining low-interest loans. In most cases, these clients received nothing. Testifying at trial were over thirty people who had paid Gurtunca money but had obtained no loans.

Gurtunca failed to report most of the money he received from clients on his income tax returns. During 1978–1981, Gurtunca filed, along with his Forms 1040, Schedules C ("Profit or (Loss) From Business or Profession") that stated his main business activity as "consultant." On the Schedules C for those years, Gurtunca reported total income of $183,550. The government asserted that Gurtunca should have reported total income of $437,063.97 on his Schedules C for 1978–1981. As a result of his false reporting, the government contended that Gurtunca avoided approximately $97,000 in income taxes.

A federal grand jury in Milwaukee agreed with the government that Gurtunca had willfully underreported his income. The grand jury indicted Gurtunca, charging him with violating 26 U.S.C. § 7206(1), which provides:

Any person who—

    (1) **Declaration under penalties of perjury.**—Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter;

    \*    \*    \*    \*    \*    \*

shall be guilty of a felony. . . .

The indictment charged that for 1978, 1979, and 1980, Gurtunca willfully underreported gross receipts on line 1(a) of his Schedules C, and that for 1981, Gurtunca willfully underreported total income on line 5 of his Schedules C.[1]

After a three-day bench trial, the district court found Gurtunca guilty on all four counts. *United States v. Gurtunca*, 638 F.Supp. 296, 297–98 (E.D.Wis.1986). The district court found that the funds Gurtunca received were reportable on his consulting business Schedules C, even though he may have obtained the funds by fraud. *Id.* at 299. The district court sentenced Gurtunca to eighteen months in prison on Count 1, and fined Gurtunca $5,000 on Counts 2 and 3. The court also placed Gurtunca on three years probation on Counts 2, 3, and 4. As conditions of probation on count 4, the court ordered Gurtunca to pay the costs of prosecution ($13,000) and to reimburse the government for the costs of his court-appointed attorneys. The district court reserved determining the amount Gurtunca must reimburse the government until after Gurtunca's court-appointed attorneys filed a request for fees; the district court has not yet determined the amount of fees that Gurtunca must pay. Gurtunca appeals both his conviction and the probation condition that he reimburse the government for his court-appointed attorneys' fees. For the reasons that follow, we affirm the district court.

### I.

█ Because the district court has not determined the amount of attorneys' fees for which Gurtunca must reimburse the government, we must first consider whether we have jurisdiction over this appeal. 28 U.S.C. § 1291 grants courts of appeals jurisdiction over "final decisions of the district courts. . . ." The Supreme Court long ago stated that a judgment is final "when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." *St. Louis, Iron Mountain & Southern R.R. v. Southern Express Co.*, 108 U.S. 24, 28–29, 2 S.Ct. 6, 8, 27 L.Ed. 638 (1883). In a criminal case, "[f]inal judgment means . . . sentence. The sentence is the judgment." *Berman v. United States*, 302 U.S. 211, 212, 58 S.Ct. 164, 165, 82 L.Ed. 204 (1937).

---

1. In 1978, 1979, and 1980, Gurtunca reported consulting business receipts on line 1(a) (gross receipts or sales); in 1981, Gurtunca reported consulting business income on line 4(b) (other income). This appears to be the reason for the slight difference between the charges in 1978–1980, and the charge in 1981.

The Court, however, has not always interpreted finality as strictly as the quote from *Southern Express Co.* might indicate. In *Corey v. United States*, 375 U.S. 169, 84 S.Ct. 298, 11 L.Ed.2d 229 (1963), the district court, pursuant to the procedure set out at that time in 18 U.S.C. § 4208(b), committed the defendant to the Attorney General's custody but delayed pronouncing final sentence until receiving a report about the defendant from the Bureau of Prisons. *Id.* at 169–70, 84 S.Ct. at 300. The Supreme Court stated that a final, appealable judgment existed when the district court entered its order committing the defendant to the Attorney General's custody, despite the fact that the district court had not imposed its final sentence. *Id.* at 174, 84 S.Ct. at 302.

*Corey* is instructive here. As in *Corey*, Gurtunca's sentence "sufficiently satisfies conventional requirements of finality for purposes of appeal." *Id.* The district court has fully tried the merits, has found Gurtunca guilty, has imposed punishment on Gurtunca, and has entered judgment. Gurtunca's sentence is definite; all that remains for the district court to do is determine the exact amount of fees. *Compare Corey*, 375 U.S. at 174, 84 S.Ct. at 302; *see also id.* at 176, 84 S.Ct. at 303 (Harlan, J., dissenting).

A criminal defendant, and the public generally, have strong interests in speedily resolving criminal charges. *Flanagan v. United States*, 465 U.S. 259, 264, 104 S.Ct. 1051, 1054, 79 L.Ed.2d 288 (1984). These interests also extend to the criminal appeal process; the rules governing criminal appeals reflect the concern that courts dispose of criminal appeals "as expeditiously as possible." *Corey*, 375 U.S. at 172, 84 S.Ct. at 301. The final judgment rule is meant to serve the defendant's and public's interests in speedily resolving criminal cases by preventing "a succession of costly and time-consuming appeals" of interlocutory trial court decisions (such as pretrial disqualification of defense counsel, the issue in *Flanagan*). *See Flanagan*, 465 U.S. at 264–65, 104 S.Ct. at 1054. Here, however, where trial is complete and the sentence "sufficiently satisfies convention-

al requirements of finality," *Corey*, 375 U.S. at 174, 84 S.Ct. at 302, holding that the district court's judgment is not final would merely delay review of the merits and defeat Gurtunca's and the public's interest in resolving the charges against him. Based on this consideration, and on the Supreme Court's reasoning in *Corey*, we hold that we have jurisdiction over this appeal. *Cf. United States v. McKnight*, 771 F.2d 388, 390 (8th Cir.1985) (in a case where the district court ordered restitution as a condition of probation but left the amount to be determined later, the court of appeals stated that the probation sentence was a "final decision for purposes of appellate review"), *cert. denied*, 475 U.S. 1014, 106 S.Ct. 1194, 89 L.Ed.2d 309 (1986).

## II.

■ On the merits, Gurtunca, while conceding that the funds he received from clients were taxable income, argues that he had no obligation to report those funds on his consulting business Schedules C as the indictment charged. According to Gurtunca, the funds were either reportable on different Schedules C (because he obtained the funds from a "business"—obtaining money by false pretenses—different from his consulting business) or not reportable on any Schedules C (because Schedules C is for receipts from a trade or business and obtaining money by false pretenses is not a trade or business). Gurtunca asserts that since the government charged him with understating receipts and income on his consulting business Schedules C, and since he had no obligation to report the funds on those Schedules C, the government did not prove what it charged. Therefore, says Gurtunca, this court must reverse his conviction.

Gurtunca's argument is not frivolous. The government, by charging Gurtunca with specifically failing to report the funds on his Schedules C, has made this a more difficult case than it had to be—especially given Gurtunca's admission that the funds were taxable income. The government could have foreclosed the argument Gurtunca makes here simply by charging Gur-

tunca with failing to report the funds "on his Schedule C *or otherwise*" (see *United States v. Edwards*, 777 F.2d 644, 652 (11th Cir.1985), *cert. denied*, 475 U.S. 1123, 106 S.Ct. 1644, 1645, 90 L.Ed.2d 89 (1986) which upheld a similarly-worded indictment) or by charging Gurtunca with underreporting gross income or taxable income. As charged this case is unnecessarily close.

Be that as it may, we agree with the district court that "[b]ecause those funds were received by Gurtunca as a loan broker-consultant, and because they were related to that business even though Gurtunca may have been a fraud, a crook or a thief, they were reportable on the Schedule C's as charged." 638 F.Supp. at 299. As the district court noted

> If Gurtunca had been a baker and, on the side, had sold marijuana from the back door of his bakery, Gurtunca's argument might have more appeal. Then, with a straighter face, one could say that his marijuana income does not belong on his bakery business Schedule C. If, however, Gurtunca the baker had laced his brownies with marijuana and sold them at his counter, the money received from their sale would have been reportable on his bakery business Schedule C. When the relationship between the stated business and the means by which the funds are obtained is close, as it is here, the funds are reportable on a business Schedule C.

*Id.*

Gurtunca argues that the funds were not trade or business receipts because he did not hold himself out as being in the business (or offering the service) of wrongfully appropriating funds. The requirement that a taxpayer must hold himself out as offering goods and services to others to be carrying on a trade or business originated in Justice Frankfurter's concurrence in *Deputy v. DuPont*, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed.2d 416 (1940). Although other courts had held that "holding out" was an essential element in conducting a trade or business, *see, e.g., Gajewski v. Commissioner*, 723 F.2d 1062 (2d Cir. 1983), *cert. denied*, 469 U.S. 818, 105 S.Ct.

88, 83 L.Ed.2d 35 (1984); *Estate of Cull v. Commissioner*, 746 F.2d 1148 (6th Cir. 1984), *cert. denied*, 472 U.S. 1007, 105 S.Ct. 2701, 86 L.Ed.2d 717 (1985), the Supreme Court never expressly adopted the holding out requirement, and, in fact, has recently rejected it. *Commissioner v. Groetzinger*, — U.S. ——, 107 S.Ct. 980, 94 L.Ed.2d 25 (1987).

Even assuming that the holding-out requirement was a necessary element of carrying on a trade or business during the years in question here, Gurtunca's holding-out argument is irrelevant. The funds were reportable on Gurtunca's consulting Schedule C only if Gurtunca obtained the funds through his consulting business. Gurtunca did receive the funds through his consulting business, and nobody disputes that as a "consultant" Gurtunca held himself out as offering the service of obtaining loans.

We also reject Gurtunca's argument that the Internal Revenue Service's position that embezzlers are not engaged in a trade or business compels the result that the funds here were not reportable on Gurtunca's Schedules C because Gurtunca obtained them by false pretenses. It is true that courts have held that embezzling is not a trade or business. *McKinney v. United States*, 76-2 U.S. Tax Cas. (CCH) ¶ 9728 (W.D.Tex.1976) [Available on WESTLAW, 1976 WL 1151]; *Whitler v. Commissioner*, 49 Tax Ct.Mem.Dec. (P-H) ¶ 80-214 (1980). Gurtunca cites *United States v. Rochelle*, 384 F.2d 748 (5th Cir.1967) for the proposition that embezzlement and false pretenses are indistinguishable and, therefore, the funds he obtained by false pretenses are not business receipts reportable on Schedule C. But *Rochelle* does not help Gurtunca. In *Rochelle*, the Fifth Circuit merely stated that it could see no difference between embezzled funds and funds obtained by false pretenses for purposes of determining whether those funds were gross or taxable income. *Id.* at 751. The *Rochelle* court did not decide where a taxpayer should report those funds.

Perhaps, as Gurtunca suggests, the funds he received were properly reportable

elsewhere on his tax returns. However, given the close connection between those funds and Gurtunca's consulting business, we agree with the district court that Gurtunca could have properly reported the funds on the consulting Schedules C. As the district court noted, had Gurtunca reported the funds elsewhere, his failure to report them on his Schedules C would not have led to conviction under § 7206(1) because willfulness would have been missing. 638 F.Supp. at 299. Here, however, Gurtunca's failure to report the funds anywhere on his return demonstrates that he obviously attempted to hide the funds (which he concedes were taxable income) from the IRS, and undercuts any argument that he might have made that his failure to report the funds was not willful. The district court properly convicted Gurtunca for violating § 7206(1).

### III.

■ Besides challenging his conviction, Gurtunca also contends that the district court erred by ordering him to reimburse the government for his court-appointed attorneys' fees as a probation condition. 18 U.S.C. §§ 3006A(c) and (f) authorize a district court to order a defendant to reimburse the government for fees. Thus, the district court had the general power to order reimbursement; the issue here is the district court's power to make reimbursement a probation condition under the federal probation statute, 18 U.S.C. § 3651.[2]

The circuits that have specifically considered this issue have reached different conclusions. The First Circuit has held that a district court may condition a de-

fendant's probation on reimbursement as long as the defendant is able to pay. *United States v. Santarpio*, 560 F.2d 448, 455 (1st Cir.1977). The Fifth Circuit, however, has held that a district court may not impose reimbursement as a probation condition. *United States v. Turner*, 628 F.2d 461, 466-67 (5th Cir.1980); *United States v. Jimenez*, 600 F.2d 1172, 1174-75 (5th Cir.1979). According to the Fifth Circuit, § 3651 provides three exclusive monetary payments that a district court may impose as probation conditions: fines, restitution to victims, and support payments to dependents. Since reimbursement is not a fine, restitution to a victim, or support payment, reimbursement is not a permissible probation condition. *Turner*, 628 F.2d at 467; *Jiminez*, 600 F.2d at 1174-75. The Fifth Circuit's restrictive reading of § 3651 is consistent with a trend in other circuits (generally in cases involving a district court conditioning a corporation's probation on the corporation making a charitable contribution) to limit any monetary probation condition to fines, restitution, and support payments. *See, e.g., United States v. John Scheer Presents, Inc.*, 746 F.2d 959, 963-64 (3rd Cir.1984); *United States v. Missouri Valley Construction Co.*, 741 F.2d 1542 (8th Cir.1984) (en banc); *United States v. Prescon Corp.*, 695 F.2d 1236, 1242-44 (10th Cir.1982).[3]

This circuit has held that § 3651 authorizes a district court to order reimbursement as a probation condition. *United States v. Allen*, 596 F.2d 227, 232 & n. 6 (7th Cir.1979). Gurtunca concedes that the Seventh Circuit authorizes repayment of

---

**2.** Section 3651 states, in relevant part:

Upon entering a judgment of conviction of any offense not punishable by death or life imprisonment, any court having jurisdiction to try offenses against the United States when satisfied that the ends of justice and the best interest of the public as well as the defendant will be served thereby, may suspend the imposition or execution of sentence and place the defendant on probation for such period and upon such terms and conditions as the court deems best.

. . . .

While on probation and among the conditions thereof, the defendant—

May be required to pay a fine in one or several sums; and

May be required to make restitution or reparation to aggrieved parties for actual damages or loss caused by the offense for which conviction was had; and

May be required to provide for the support of any persons, for whose support he is legally responsible.

**3.** Since this case does not involve a district court requiring a defendant to make a charitable contribution as a probation condition, we express no view on that specific issue.

fees as a probation condition and asks us to reconsider *Allen.* We decline Gurtunca's invitation to overrule *Allen* because we are convinced that our conclusion in *Allen* was correct. Section 3651's language is "broad and inclusive." *See Missouri Valley Construction Co.,* 741 F.2d at 1552 (Gibson, J., concurring and dissenting). Section 3651 allows a district court to place a defendant on probation "upon such terms and conditions as the court deems best," thus giving the sentencing judge "'an exceptional degree of flexibility'" in determining probation conditions. *United States v. Alexander,* 743 F.2d 472, 479 (7th Cir.1984); *United States v. Torrez–Flores,* 624 F.2d 776, 784 (7th Cir.1980).

While § 3651 does specifically mention three monetary probation conditions that a district court may order, the statute does not expressly forbid other monetary payments. Furthermore, § 3651 introduces the three monetary conditions as *"among* the [probation] conditions" a district court might order. (Emphasis added.) Section 3651 states the three specific monetary conditions permissively; for example, a defendant *"may be* required to pay a fine...." (Emphasis added.) "To find limitation in the three [permissive] phrases flies in the face of their non-restrictive nature." *Missouri Valley Construction Co.,* 741 F.2d at 1552 (Gibson, J., concurring and dissenting). Since § 3651 gives the district court broad power to establish probation conditions, and since the reimbursement condition "bear[s] 'a reasonable relationship to the treatment of the accused and the protection of the public,'" *Santarpio,* 560 F.2d at 455 (citation omitted), the district court had authority to condition Gurtunca's probation on his reimbursing the government for the attorneys' fees.[4]

■ Gurtunca also contends, however, that the district court could not order reimbursement because the court did not specif-

ically inquire into his ability to pay or expressly find that he had funds available for reimbursement. The Criminal Justice Act, 18 U.S.C. § 3006A(f) authorizes a district court to order reimbursement upon finding that "funds are available for payment...." *See also* 18 U.S.C. § 3006A(c). The government suggests that since reimbursement is a proper probation condition under § 3651, and § 3651 does not require a district court to find that a defendant has funds available for reimbursement, no hearing or finding is necessary. We disagree. Section 3006A(f) specifically delineates when reimbursement is appropriate. Section 3651, the more generally-worded probation statute, allows a district court to condition probation on reimbursement when reimbursement is otherwise appropriate. *See United States v. Vaughn,* 636 F.2d 921, 924–25 n. 7 (4th Cir.1980). To hold as the government suggests would make an end run around § 3006A(f)'s express requirement that a district court find the defendant has available funds before ordering reimbursement.

■ The district court did not expressly inquire into or make a finding regarding whether Gurtunca had available funds. That does not require us to vacate the reimbursement order, however, because Gurtunca is in no position to complain about the lack of a hearing or finding. Gurtunca's presentence report, which the sentencing judge read, contained sufficient information to support a finding that Gurtunca had available funds. Although he could have, Gurtunca did not dispute the information's accuracy or in any way attempt to qualify the information. Likewise, Gurtunca did not object to the reimbursement order or request an express finding (despite ample opportunity). Finally, Gurtunca did not assert in the district court or on appeal that he is unable to pay the fees.

---

4. The Sentencing Reform Act, Pub.L.No. 98–473, Title II, 98 Stat. 1987, 18 U.S.C. §§ 3561–66 (Supp.III 1985), repealed § 3651 effective November 1, 1987. *See* Pub.L.No. 99–217, § 4, 99 Stat. 1728 (1985). The Sentencing Reform Act's new probation provision is located at 18 U.S.C. § 3563 (Supp.III 1985). Section 3563(b)(20) expressly leaves the range of possible probation conditions open-ended. *Id.* (district court may

require defendant to "satisfy such other conditions as the court may impose"); *see also* S.Rep.No. 98–225, 98th Cong., 2d Sess. 95, *reprinted in* 1984 U.S.Code Cong. & Ad.News 3182, 3278 ("The list [of probation conditions in § 3563(b)] is not exhaustive, and it is not intended to limit a court's options—conditions of a nature very similar to, or very different from, those set forth may be imposed.").

Furthermore, the district court may compel reimbursement only if Gurtunca has funds available for reimbursement. *See Santarpio,* 560 F.2d at 455–56. Gurtunca may assert any defense to payment (including lack of funds) at any time the government attempts to revoke his probation for nonpayment. Gurtunca's ability to argue that he lacks funds at that time obviates the need for a hearing or a specific finding at the sentencing hearing regarding whether he can pay. *See Santarpio,* 560 F.2d at 455–56; *cf. United States v. Durka,* 490 F.2d 478, 480 (7th Cir.1973) (per curiam) (district court could order acquitted defendant to reimburse fees without holding a hearing; defendant could raise any defenses to payment if government brought contempt proceedings for nonpayment). Thus, the district court's conditioning Gurtunca's probation on his reimbursing the attorneys' fees was proper, even though the district court did not expressly find that Gurtunca has funds available for reimbursement.

AFFIRMED.