### UNITED STATES of America, Plaintiff–Appellee,

v.

### Michael THOMPSON, Defendant–Appellant.

### No. 93–1262.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1994.

Decided May 10, 1994.

---

Asst. U.S. Atty. (argued), Office of the U.S. Atty., Criminal Div., Chicago, IL, Barry R. Elden, Asst. U.S. Atty., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

David S. Mejia (argued), Oak Park, IL, for defendant-appellant.

Before POSNER, Chief Judge, ROVNER, Circuit Judge, and MIHM, District Judge.[*]

ROVNER, Circuit Judge.

Sergeant Michael Thompson of the Village of Forest Park, Illinois police force, agreed to coordinate after-hours security for Jerry Gleason Chevrolet, Inc. ("Gleason Chevrolet"), a Forest Park automobile dealership. Thompson arranged for off-duty police officers to patrol the dealership each evening and for twelve hours on Sundays. Gleason Chevrolet agreed to pay the off-duty officers an hourly wage and to pay Thompson a weekly fee for coordinating the service. Between 1986 and 1989, Gleason Chevrolet paid for this service by writing a weekly check to Thompson, who would cash the check, distribute the appropriate wage to each officer, and retain the remainder for himself. Thompson failed to report any gross receipts from this activity on his personal tax returns for the years 1986 through 1989, and the government charged him with willfully filing false returns in violation of 26 U.S.C. § 7206(1). The government's theory was that Thompson should have reported all amounts received from Gleason Chevrolet on a separate Schedule C to his personal return. Yet after a bench trial, the district court concluded that Thompson had willfully failed to report only the Gleason Chevrolet receipts that he had retained, and not those he had distributed to the other officers. The court accordingly convicted Thompson on two of the four counts charged in the indictment, but with respect to lesser amounts than the government had asserted at trial. In this appeal, Thompson argues that he is entitled to a judgment of acquittal or to a new trial because the district court convicted him of amended charges against which he had no opportunity to defend. For the reasons discussed below, we affirm Thompson's convictions.

## I. BACKGROUND

Thompson has served on the Forest Park police force in various capacities since 1971. He was contacted in June 1986 by Gerald Gleason ("Gleason"), the owner of Gleason Chevrolet, about arranging for off-duty police officers to provide security for his business. Gleason was interested in receiving eight hours of security service at night from Monday through Saturday and twelve hours of service on Sunday, for a weekly total of sixty hours. Thompson agreed to organize the service and to function as a liaison between Gleason Chevrolet and the participating officers. Gleason and Thompson agreed that Gleason Chevrolet would compensate the officers at the rate of ten dollars per hour but that it would cut a single check made payable to Thompson, who would then pay the other officers. For his role as a liaison, Thompson would be paid an additional twenty-five dollars per week.

[*] The Hon. Michael M. Mihm, Chief Judge of the United States District Court for the Central District of Illinois, sitting by designation.

Thompson then met with twelve to fifteen officers at the Forest Park police station and described the details of the off-duty opportunity with Gleason Chevrolet. He indicated that the officers would be paid ten dollars per hour, that they would be paid in cash, and that each officer would be responsible for paying his own taxes. A number of officers volunteered, and the security operation began in July 1986.

From the inception of the operation until December 1989, Thompson would receive each Friday a $625.00 check in his name from Gleason Chevrolet. Thompson would cash the check at a nearby bank and then return to the dealership, where he would prepare an envelope for each participating officer, enclosing that officer's hourly wages. Thompson would then distribute the envelopes to the officers at the police station.[1] In 1986 and 1987, Thompson typically worked a security shift at Gleason Chevrolet three Sunday evenings a month, so that each week after cashing the Gleason Chevrolet check, he would retain wages for his own shifts in addition to his twenty-five dollar oversight fee.[2] In 1986, Thompson received checks from Gleason Chevrolet totaling $15,625.00, and the district court found that he had retained approximately $3,300.00 of that amount. In 1987, the Gleason Chevrolet checks made payable to Thompson totaled $33,630.00, of which the district court found that Thompson had retained approximately $6,700.00.

Thompson's personal income tax returns for 1986 and 1987, filed jointly with his wife, did not reflect any gross receipts from Gleason Chevrolet. Those returns were prepared by Betty Zimmerman, who testified at trial that because Thompson was a police officer

and because police officers frequently work outside jobs, she had asked in the course of preparing Thompson's returns whether he had any additional sources of income. Thompson had indicated each year that he did not. Indeed, at the time, Zimmerman did not know that Thompson was working for Gleason Chevrolet.

In November 1986, Thompson incorporated a security consulting and detective service that bore his name. There was conflicting evidence at trial as to the nature of the incorporated business, although Thompson indicated that it was his intent to report earnings from Gleason Chevrolet, as well as other outside earnings, on his corporate rather than his personal return. Yet Thompson did not file a corporate tax return of any sort in 1986, and the corporation's return for 1987 indicated that there had been "no activity."

Thompson was charged in a four-count indictment with willfully filing false personal returns for the years 1986 through 1989. The government alleged that Thompson's returns omitted "substantial gross receipts from the business activity of providing a security service for Jerry Gleason Chevrolet, Inc." in violation of 26 U.S.C. § 7206(1).[3] Before Thompson's trial, his attorney asked the government to indicate specifically what receipts had allegedly been omitted from the personal returns. In a letter dated June 10, 1992, the government notified Thompson's counsel that his client had willfully failed to report $15,625.00 in 1986, $32,380.00 in 1987, $36,075.00 in 1988, and $42,969.00 in 1989. These figures represented the total of the weekly Gleason Chevrolet checks in each of the relevant years. They thus included the amounts Thompson had distributed to the other officers. The government maintained

---

1. The office manager of Gleason Chevrolet testified that Thompson requested that she cut a separate check for each officer, but she refused, saying it was more convenient for the dealership to cut a single check.

2. Shortly after the service was up and running, however, the officers began working seven rather than eight hour shifts Monday through Saturday. Because Gleason Chevrolet continued to pay Thompson as if it were receiving eight hour shifts, Thompson retained an additional sixty dollars per week from this overpayment.

3. Section 7206(1) provides:

   Any person who—
   (1) Willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter

   \* \* \* \* \* \*

   shall be guilty of a felony. . . .

throughout the trial that Thompson should initially have reported on a Schedule C to his personal return all amounts received from Gleason Chevrolet. His distribution of a portion of those amounts should then, according to the government, have been reflected by an appropriate deduction.

After a bench trial, the district court convicted Thompson on two counts of the indictment and acquitted him on two counts. The court rejected Thompson's argument that he had not operated a security business and that he instead had acted merely as a conduit between Gleason Chevrolet and the other officers. Because Thompson had been operating a business, the court concluded that he should have reported on his personal returns all amounts received from Gleason Chevrolet, including the distributed amounts. Yet the court also found that Thompson had not *willfully* failed to report all gross receipts because he had been unaware of the requirement that he report the distributed amounts. The court therefore rejected the government's theory that Thompson had willfully failed to report his total gross receipts from Gleason Chevrolet.

Yet with respect to the retained amounts alone, the district court found that Thompson had known in 1986 and 1987 that he had gross receipts from Gleason Chevrolet that should have been reported on his personal returns. Although Thompson explained his belief that because the retained amounts were more than offset by related expenses, he had no obligation to report them, the district court found this explanation incredible. Because the evidence indicated that Thompson knew how to report gross receipts and then deduct expenses with respect to other income items and because Thompson had wholly failed to inform his tax preparer of the Gleason Chevrolet receipts, the court found that Thompson had willfully failed to report $3,300.00 in gross receipts in 1986.

As for 1987, the court indicated that Thompson had at least filed a corporate re-

turn, but that return, which the court labeled a "truly bizarre document," indicated that the corporation had "no activity" in that year.[4] Thompson blamed the preparer of his 1987 corporate return, but the district court found that the information Thompson provided to the preparer, which indicated that he had only $2,500.00 in corporate income and a multitude of expenses, was intentionally erroneous. The court thus concluded that Thompson had willfully filed a false personal return in 1987, as charged in count II of the indictment.

The court acquitted Thompson of the charges relating to his 1988 and 1989 personal returns because Thompson's corporate returns for those years reported at least some receipts from Gleason Chevrolet. This indicated to the court that Thompson had not willfully filed false personal returns in those years.

Thompson subsequently filed a motion for a judgment of acquittal or for a new trial on the two counts of conviction. He argued that the district court's finding of a willful failure to report only the retained amounts constituted an improper amendment of the indictment. In denying this motion, the district court acknowledged that Thompson had been convicted for failing to report lesser amounts than those the government had urged at trial, but it found that this had not resulted in a constructive amendment to the indictment, nor had it worked any unfair prejudice to Thompson. The court instead concluded that Thompson had had an adequate opportunity to defend against the charges.

## II. DISCUSSION

### A.

Thompson's primary challenge on appeal is that he was convicted of two offenses—failing to report $3,300.00 in gross receipts on his 1986 return and $6,700.00 in gross receipts on his 1987 return—for which he had not been charged and against which he had no

---

4. The government had charged in the indictment and argued at trial that Thompson's Gleason Chevrolet receipts should have been reported on his personal rather than his corporate returns. The district court seemed to agree but noted that

if Thompson in fact had reported the receipts on his corporate return, that would have shown a lack of intent to evade the tax. *See United States v. Gurtunca,* 836 F.2d 283, 287 (7th Cir.1987).

opportunity to defend. Thompson asserts that the district court's decision constructively amended the indictment and that he is therefore entitled to a judgment of acquittal or, in the alternative, to a new trial.

■ The Grand Jury Clause of the Fifth Amendment is violated when the evidence at trial or the instructions to the jury broaden the possible bases of conviction alleged in the indictment. *United States v. Kramer*, 955 F.2d 479, 487 (7th Cir.), *cert. denied,* —— U.S. ——, ——, 113 S.Ct. 595, 596, 121 L.Ed.2d 533 (1992); *see also United States v. Miller*, 471 U.S. 130, 140, 105 S.Ct. 1811, 1817, 85 L.Ed.2d 99 (1985). " 'Any broadening [of] the possible bases for conviction from that which appeared in the indictment is fatal' and is reversible per se." *United States v. Crockett*, 979 F.2d 1204, 1210 (7th Cir.1992) (quoting *United States v. Leichtnam*, 948 F.2d 370, 377 (7th Cir.1991) (internal quotation omitted)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1617, 123 L.Ed.2d 176 (1993). The indictment here charged that for the tax years 1986 and 1987, Thompson

> did willfully make and subscribe, and cause to be made and subscribed a joint United States Individual Income Tax Return (Form 1040), which was verified by a written declaration that it was made under the penalties of perjury and was filed with the Internal Revenue Service, which return he did not believe to be true and correct as to every material matter, in that the said return failed and omitted to disclose substantial gross receipts from the business activity of providing a security service for Jerry Gleason Chevrolet, Inc., whereas, defendant then and there well knew and believed that during the year[s] [1986 and 1987] he had received substantial gross receipts from the business activity of pro-

viding a security service for Jerry Gleason Chevrolet, Inc.

(R. 1.) The indictment thus made the general charge that Thompson had failed to disclose "substantial gross receipts" from Gleason Chevrolet; it did not charge the failure to report a specific amount of receipts nor did it purport to distinguish between those receipts retained by Thompson and those distributed to his fellow officers. *Cf. Siravo v. United States*, 377 F.2d 469, 472 (1st Cir.1967) (approving similar charge under section 7206(1)). From the face of the indictment, therefore, it is clear that the convictions here did not result in a broadening of the government's charges. The indictment alleged a failure to report substantial gross receipts from Gleason Chevrolet in 1986 and 1987, and Thompson was convicted of precisely those offenses. Thompson thus cannot invoke the per se rule here.

■ Yet Thompson maintains that the indictment does not tell the whole story of the government's case. He directs our attention to the June 10, 1992 letter in which the government, at Thompson's request, specified the amounts allegedly omitted from his returns. As we have indicated, those amounts reflected the government's theory that Thompson had willfully failed to report all gross receipts received from Gleason Chevrolet, including the distributed amounts. Thompson suggests that the letter is tantamount to a bill of particulars under Fed. R.Crim.P. 7(f)[5] and contends that the government was limited in its proof at trial to the amounts alleged in the letter.

■ Assuming without deciding that the government's letter had the force of a bill of particulars,[6] Thompson still was not convicted of broader charges than those alleged in the indictment and the letter. Rather than a

---

5. Rule 7(f) provides:

> The court may direct the filing of a bill of particulars. A motion for a bill of particulars may be made before arraignment or within ten days after arraignment or at such later time as the court may permit. A bill of particulars may be amended at any time subject to such conditions as justice requires.

6. Although we need not decide the issue in this case, it is unlikely that it did, as Thompson never

moved for a bill of particulars, and the court never directed the government to file one.

In any event, we previously have held that the government has no obligation to prove the precise amount of a misstatement alleged in an indictment (*United States v. Warden*, 545 F.2d 32, 36 (7th Cir.1976)), as any material misstatement may result in a violation of section 7206(1). *See, e.g., United States v. Hedman*, 630 F.2d 1184, 1196 (7th Cir.1980), *cert. denied,* 450 U.S. 965, 101 S.Ct. 1481, 67 L.Ed.2d 614 (1981).

constructive amendment, there was at most a prejudicial variance between the charges and the proof. "A variance occurs where the trial evidence 'narrowed the indictment's charges without adding any new offenses.'" *United States v. Kuna,* 760 F.2d 813, 818 (7th Cir.1985) (quoting *Miller,* 471 U.S. at 138, 105 S.Ct. at 1816). Because "[a]n indictment may be narrowed, either constructively or in fact, without resubmitting it to the grand jury" (*Leichtnam,* 948 F.2d at 376), such a variance is not a per se violation of the Fifth Amendment's Grand Jury Clause. Instead, a variance is subject to a harmless error analysis; reviewing courts look to whether the narrowed charges "surprised the defendant and prejudiced [the] defense or created a risk of double jeopardy." *Id.* at 377; *see also United States v. Rosin,* 892 F.2d 649, 651 & n. 1 (7th Cir.1990); *Kuna,* 760 F.2d at 819. Thompson has not suggested that there is a risk of double jeopardy, and we find no unfair surprise or prejudice to Thompson's defense in the court's narrowing of the government's charges.

Thompson maintains that because the government tried this case on the broad theory that he was obligated to report all Gleason Chevrolet receipts, he had no opportunity to defend against a willful failure to report only a portion of those receipts. But the amounts Thompson retained were a subset of the total amounts referenced in the government's June 10, 1992 letter. Thompson was therefore on notice that the government was asserting a willful failure to report both the retained and distributed amounts.[7] And the record indicates that Thompson mounted a separate defense with respect to each amount. Thompson testified that he did not know he was required to report the amounts distributed to other officers, and the district court accepted Thompson's testimony in this regard. Yet that defense was not intended to and could not absolve Thompson of responsibility for the amounts he had retained. With respect to those amounts, Thompson maintained that he had believed there was no reporting obligation because his receipts had been more than offset by related expenses. The district court did not find this explanation credible, and it accordingly convicted Thompson of a willful failure to report the retained amounts. Yet Thompson clearly had the opportunity to and did defend against this charge.[8] The retained receipts were always a central part of the government's case, and Thompson was not prejudiced when the district court found that he

7. Indeed, in denying Thompson's motion for a judgment of acquittal at the close of the government's case, the district court specifically noted the two types of receipts at issue—those that Thompson had distributed to other officers and those that he had retained. The court indicated that Thompson had failed to report either amount. (Tr. at 146–47.)

8. Thompson specifically points to the fact that the district court questioned the income and expense amounts on the two handwritten documents he had prepared and introduced at trial as proof of the fact that his Gleason Chevrolet expenses had exceeded his retained receipts in 1986 and 1987. Thompson maintains that he had no opportunity to explain those figures at trial. In finding Thompson's explanation for failing to report his retained receipts not credible, the district court noted that the income figures on Thompson's handwritten exhibits were substantially understated, and the court also questioned the legitimacy of some of the expenses. Yet its doubts about those exhibits did not provide the sole support for the court's holding. Instead, the court articulated other reasons for its credibility finding—for example, that Thompson had failed to inform his tax preparer of any

income or expenses relating to his work for Gleason Chevrolet, although she specifically had asked about other income sources, and the fact that Thompson had reported both income and expenses for a piece of rental property. Indeed, in rejecting this very argument in denying Thompson's post-trial motion, the district court stated that its credibility finding was not based on the veracity of Thompson's alleged expenses; rather, "[t]he court's ruling is based on a determination that Thompson did not have a good-faith misunderstanding of his obligation under current tax laws at the time he filed his returns." (R. 55 at 8.) The court's finding is supported by the trial evidence, and we have no grounds for disturbing it.

In any event, we also must question the premise for Thompson's argument that he had no opportunity to substantiate the figures on the exhibits because the record reveals that the district court never limited the evidence relating to Thompson's income and expense exhibits. The government raised significant questions at least about the income figures in its cross-examination of Thompson (*see, e.g.,* Tr. at 299–301), and Thompson had every opportunity to respond on redirect. (*See, e.g.,* Tr. at 314, 318.) The district court never limited his ability to do so.

had willfully failed to report only these lesser amounts. Any variance between the indictment and the government's proof thus did not prejudice Thompson's defense.

### B.

■ Thompson also contends that we should vacate his felony convictions because he was deprived of a determination of his guilt only as to misdemeanor tax offenses relating to his corporate returns in 1986 and 1987. Thompson's focus on his corporate returns, although not the subject of any charges in this case, is prompted by the district court's reliance on those returns to negate the willfulness element of Thompson's failure to report Gleason Chevrolet receipts on his personal returns for 1988 and 1989. Thompson argues that in place of convictions for willfully filing false returns under section 7206(1), he was entitled to a determination of whether he instead was guilty of the following misdemeanors: (1) the willful failure to file a corporate return for the tax year 1986 under 26 U.S.C. § 7203; and (2) the willful filing of a materially false corporate return in 1987 under 26 U.S.C. § 7207. Thompson asserts that these are lesser included offenses to that of willfully filing a false personal return under section 7206(1) and that they therefore should have been considered by the district court. This argument fails for several reasons.

The most obvious reason is that Thompson never requested that the district court consider the possibility of these allegedly lesser included offenses prior to its decision, although he had every opportunity to do so. Indeed, prior to ruling, the court conducted a hearing in which it solicited the parties' views on the propriety of convicting Thompson only with respect to the retained amounts, and Thompson never suggested that he should be convicted only of misdemeanor offenses relating either to his personal or corporate returns. (*See* October 13, 1992 Tr.) The argument has therefore been waived.

■ Yet because the government has not argued waiver (*see United States v. Caputo,* 978 F.2d 972, 975 (7th Cir.1992)), we think the argument also fails for a more fundamental reason. The government charged and maintained throughout the trial that Thompson had been obligated to report the Gleason Chevrolet receipts on his personal returns.[9] The indictment made no charges relating to the returns of Thompson's corporation. Those returns only became relevant when the district court, in analyzing the willfulness issue under *United States v. Gurtunca,* 836 F.2d 283 (7th Cir. 1987), attempted to determine whether Thompson had reported any Gleason Chevrolet receipts on his corporate returns.[10] Although the district court appropriately looked to the corporate returns under *Gurtunca,* the charges in this case did not relate to those returns. If the court had done what Thompson now suggests and convicted him of misdemeanor offenses relating to the corporate returns, there *would* be a problem under the Fifth Amendment because the court would have broadened the indictment to encompass returns as to which no charge had been made. *See, e.g., Stirone v. United States,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Leichtnam,* 948 F.2d at 379–80. Because offenses relating to a personal return are not interchangeable with those re-

---

9. Thompson does not argue that his receipts from Gleason Chevrolet properly belonged on his corporate rather than his personal returns. Indeed, the checks from Gleason Chevrolet were made out to Thompson himself and not to his corporation. Moreover, Thompson only incorporated his security consulting and detective service in November 1986, nearly five months after he first began to receive checks from Gleason Chevrolet. It is clear in any event that corporate receipts diverted for personal use constitute income to the taxpayer in his individual capacity. *See, e.g., United States v. Whyte,* 699 F.2d 375 (7th Cir.1983); *United States v. Williams,* 875 F.2d 846, 850–52 (11th Cir.1989); *United States*

*v. Miller,* 545 F.2d 1204, 1212–15 (9th Cir.1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1549, 51 L.Ed.2d 774 (1977).

10. In *Gurtunca,* we held that if a taxpayer reports receipts on another part of his return or on a separate return, even if they did not actually belong there, the willfulness aspect of a section 7206(1) violation would be negated. *Id.* at 287. Because Thompson did not report any Gleason Chevrolet receipts on his corporate returns for the tax years 1986 and 1987, the district court found that Thompson had violated section 7206(1) in those years.

lating to a corporate return, any offenses relating to the corporate returns are not lesser included offenses to those of which Thompson was convicted.

## III.  CONCLUSION

Because Thompson's convictions for failing to report his retained receipts from Gleason Chevrolet neither violated the Fifth Amendment nor prejudiced his opportunity to present a defense, those convictions are

AFFIRMED.