166 F.3d 406
 UNITED STATES, Appellee,
v.
Michael MERRIC, Appellant.
 No. 98-1455.
 United States Court of Appeals,
First Circuit.
 Jan. 29, 1999.
 
 Dawn M. Pelletier with whom Pelletier & Faircloth was on brief for appellant.
 Margaret D. McGaughey, Assistant United States Attorney, with whom Jay P. McCloskey, United States Attorney, and James L. McCarthy, Assistant United States Attorney, were on brief for appellee.
 Before BOUDIN, Circuit Judge, GIBSON,* Senior Circuit Judge, and LIPEZ, Circuit Judge.
 BOUDIN, Circuit Judge.
 On May 21, 1996, Michael Merric walked into the Margaret Chase Smith Federal Building in Bangor, Maine, with a homemade, double-barreled shotgun tucked into a bedroll. He told the security officer that he was going to the office handling social security matters in order to change his address. Later information reveals that Merric was at the time homeless and mentally disturbed.
 The shotgun was discovered after Merric placed the bedroll on the conveyor belt of the x-ray machine at the building's entrance. The search revealed Merric was carrying several rounds of ammunition for the shotgun. He was arrested and later charged with possession of a firearm not registered to him in the National Firearms Registration and Transfer Record in violation of 26 U.S.C. §§ 5861(d), 5871.
 In November 1996, after psychiatric evaluations and an incompetency hearing before a magistrate judge, the district court affirmed and adopted a recommendation that Merric be found incompetent to stand trial. Thereafter, Merric was confined to a federal prison hospital facility in Buttner, North Carolina, until November 1997, when he was found competent and released from the hospital. The diagnosis was that Merric suffered from schizophrenia.
 In December 1997, Merric was indicted on the firearms offense already described. Shortly before his scheduled trial in February 1998, Merric pled guilty. In April 1998, the district judge sentenced Merric to time already served in federal custody, a $4,000 fine, and a three-year term of supervised release conditioned, inter alia, on his repayment of $3,000 in counsel fees paid to Merric's assigned counsel by the government under the Criminal Justice Act. Merric now appeals from the final judgment, challenging the fine and the requirement that he repay counsel fees as a condition of supervised release.
 
 
 1
 Merric's first argument against the fine is that the district judge made inconsistent findings regarding Merric's ability to pay. This argument turns on the fact that the "judgment"--an eight-page form document--contains a page captioned "Statement of Reasons" which, in addition to other information (e.g., offense level, criminal history category) has a next-to-last sentence reading: "Fine waived or below the guideline range because of inability to pay."
 
 
 2
 It is evident from the record as a whole that the district judge deliberately considered whether Merric should be fined and concluded that he did have the ability to pay a $4,000 fine. At the sentencing hearing, the district judge heard testimony, which Merric did not contest, that Merric was to receive about $20,000 in accrued social security disability benefits, heard Merric's objection to the imposition of any fine, rejected the government's recommendation of a fine of $15,000, stated that the court did not "see why a reasonable fine at the low end of the scale would not be appropriate," and then, "with all this in mind," imposed a $4,000 fine. The page in the judgment "Criminal Monetary Penalties" specifies that a fine is imposed in the amount of $4,000. The separate memorandum entered on the same day by the district judge explicitly states that "[t]he defendant is able to pay a minimal fine but is not able" to pay more even in installments. In short, the "inability to pay" finding is patently a clerical error--as defense counsel came close to admitting at oral argument--and the case bears no relation to United States v. Monem, 104 F.3d 905, 911-13 (7th Cir.1997), where there were genuine ambiguities.
 
 
 3
 Merric's second challenge to the fine is that the district court erred in not expressly considering or making findings on the factors outlined in 18 U.S.C. § 3572(a). The statute provides that in addition to more general factors bearing on punishment (see id. § 3553(a)), the court in considering a fine should take account of such factors as the defendant's income, earning capacity, financial resources, and the burden of the fine imposed on the defendant and on anyone who is dependent on the defendant or who would be responsible for the welfare of a person financially dependent on the defendant.
 
 
 4
 This court has ruled that "a district court need not make express findings regarding a defendant's financial condition so long as the record is sufficient for adequate appellate review." United States v. Peppe, 80 F.3d 19, 22 (1st Cir.1996). See also United States v. Wilfred Am. Educ. Corp., 953 F.2d 717, 720 (1st Cir.1992). Where the pertinent information is presented in the district court, this court will assume that the district court considered it. Id. at 719. Here, the district court learned that Merric planned to remain in Ellsworth, Maine, and to live on his social security disability benefits of $835 per month after his release. His parents were willing to pay for him to stay at a hotel in Bangor for the time being. Merric, as already said, was also entitled to $20,000 in back benefits.
 
 
 5
 On this appeal, Merric points out that combining the $4,000 fine with $3,000 in counsel fees represents a considerable portion of his $20,000 net worth (he has no other assets or liabilities) and makes it more difficult to start a new life and get himself out of poverty. On the other hand, there is a presumption that the defendant will pay a fine, see U.S.S.G. § 5E1.2(a); United States v. Lombardi, 5 F.3d 568, 572 (1st Cir.1993), and the burden is on the defendant to show that his case warrants an exception. Peppe, 80 F.3d at 22. On the facts before the district judge, there was nothing improper about the decision to impose a $4,000 fine.
 
 
 6
 Merric's final objection to the fine is that the district court erred in "delegating" to the probation officer the schedule for paying the fine. Merric points out that the memorandum accompanying the judgment includes a paragraph providing that Merric is to pay a fine of $4,000 to the Clerk's Office in Bangor and continues: "Any amount that the defendant is unable to pay now shall be paid in monthly installments, to be determined in amount by the supervising officer, during the period of his supervised release." There is little doubt that this language was meant to govern, even though the judgment contains a boilerplate statement that the fine was due "[i]n full immediately."The government first says that we should review Merric's claim only for plain error because no objection was raised at sentencing to the allegedly improper delegation. The difficulty is that there is no indication that Merric was told at the sentencing hearing that a payment schedule for the fine would be delegated to the probation officer; it appears that Merric learned of this only after the formal judgment had been entered. Thus, the government is effectively arguing that to preserve his claim, Merric had to return to the district judge with a post-judgment motion. Cf. Fed.R.Crim.P. 35(c).
 
 
 7
 Most "errors" occur in a context in which counsel is on notice that the court is taking or has just taken an objectionable action. In such a case the failure to object does normally remit the defaulting party whatever protection the plain error doctrine affords. E.g., Fed. R. Evid 103(a); Fed.R.Civ.P. 51. But where the error occurs in the judgment itself, there is no settled general rule that counsel has to return to the district court and seek correction there. Efficient though this result might be, this is no occasion for us to create such an exhaustion requirement, which could well entail problems of its own.
 
 
 8
 Although this court has not previously ruled on the delegation issue, we agree with Merric that the district judge could not empower the probation officer to make a final decision as to the installment schedule for payments. The text of 18 U.S.C. § 3572(d)(2) may not be conclusive in saying that "[t]he length of time over which scheduled payments will be made shall be set by the [sentencing] court" (conceivably, "set" could include delegation); but we join the other circuit courts that have held that it is the inherent responsibility of the judge to determine matters of punishment and this includes final authority over all payment matters.[1] The government does not explicitly disagree.
 
 
 9
 The government points out that in United States v. Lilly, 80 F.3d 24, 29 (1st Cir.1996), we read a judgment requiring restitution "as directed" by the probation officer to reserve final authority to the district court. But Lilly is not on all fours, because we there relied on a later explanation by the district judge that he had not given the probation officer the authority to set a binding payment schedule. Id. Because we think that the judge rather than the probation officer must have the final authority to determine the payment schedule, we will vacate the sentence and remand so that the district judge can insert into the judgment a phrase or sentence making this reservation of authority explicit.
 
 
 10
 We now turn our attention to the other element of the sentence challenged by Merric on this appeal, namely, the district court's requirement that Merric repay the government the counsel fees it paid for his representation, an amount that later proved to be about $3,000. It clear enough that the district court can require such repayment, since 18 U.S.C. § 3006A(f) so provides.[2] However, Merric objects to making this repayment a condition of supervised release.
 
 
 11
 The transcript shows that Merric was explicitly advised at the sentencing hearing that the judgment would contain such a provision and that neither he nor his counsel made any objection to it. Accordingly, the imposition of this condition is reviewed for plain error only. This requires Merric to establish "an obvious and clear error under law" that "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." United States v. Phaneuf, 91 F.3d 255, 263 (1st Cir.1996) (quoting United States v. Olano, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).
 
 
 12
 As it happens, we think that the district court's decision to make repayment a condition of supervised release was not error at all. Admittedly, there has been a certain amount of disagreement among the circuits--not as to whether CJA counsel fees can be recovered from a defendant (the statute specifically permits it)--but as to whether such repayment can be made a condition either of probation or of supervised release.[3] Merric has, or shortly will have, the funds to repay the government, and the issue here is merely whether the district judge had authority to make this a condition of supervised release.
 
 
 13
 The statute governing conditions of supervised release, 18 U.S.C. § 3583(d), requires the court to order certain conditions--not relevant here--for any supervised release and then provides that the court "may" order "any other condition it considers to be appropriate" so long as the condition is (1) reasonably related to certain specified statutory factors, (2) involves no greater deprivation of liberty than is reasonably necessary to satisfy certain specified statutory purposes, and (3) it is consistent with any pertinent policy statements issued by the Sentencing Commission. The statutory factors and purposes specified--taken by cross-reference from a longer list set forth in 18 U.S.C. § 3553(a) as factors generally to be considered in imposing a sentence--are (so far as arguably pertinent here) the following:
 
 
 14
 -- "the need ... to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(2)(B), and
 
 
 15
 -- "the need ... to protect the public from further crimes of the defendant," id. § 3553(2)(C).
 
 
 16
 In our view, imposing the cost of CJA counsel on the defendant, where the defendant proves able to pay, is a deterrent to crime just like any other financial imposition. That monetary payments deter crime is the notion that underlines the elaborate code of fines reflected in the Federal Criminal Code and the Sentencing Guidelines. This point has been explained so thoroughly by Judge Easterbrook, sustaining a requirement that defendant pay the cost of a 90-day work release program to which he had been sentenced, that further discussion of this point is unnecessary. United States v. Turner, 998 F.2d 534, 536-38 (7th Cir.), cert. denied, 510 U.S. 1026, 114 S.Ct. 639, 126 L.Ed.2d 598 (1993).
 
 
 17
 The condition that Merric repay counsel fees out of available funds is thus "reasonably related" to deterrence, one of the factors specified by Congress, and therefore also satisfies a further factor ("the need to protect the public from further crimes of the defendant"). Congress' second requirement in 18 U.S.C. § 3583(d)--that the condition "involve[ ] no greater deprivation of liberty than is reasonably necessary" for deterrence or other specified factors, 18 U.S.C. § 3583(d)--is satisfied not only because (among other reasons) Merric can afford to pay but also because he will not be deprived of liberty at all. The final requirement under the statute is that the condition be "consistent with any pertinent policy statements" issued by the Sentencing Commission. Id.
 
 
 18
 The guideline addressed to "conditions of supervised release" (U.S.S.G. § 5D1.3) is replete with repayment conditions: these include, as mandatory conditions, adherence to an installment schedule to pay any yet unpaid fine and payment under various sections for victim restitution. Id. §§ 5D1.3(a)(5),(6). Among recommended standard conditions, the Commission suggests that the defendant be required to provide support to the defendant's dependents and to meet other family responsibilities, and also that the defendant pay the statutory special assessment or adhere to a court-ordered installment schedule for paying it. Id. §§ 5D1.3(c)(4), (14).
 
 
 19
 Given the number of repayment conditions that the Commission either required or encouraged, the requirement to repay CJA counsel fees is facially consistent with the Commission's policy guidelines. Of course, one could argue that the guideline's failure to require or recommend repayment of counsel fees as a standard condition suggests that the Commission was opposed to such a requirement, but it is at least as likely that the Commission did not focus upon the issue. In any event, the same guideline provision provides that the court "may impose other conditions of supervised release" so long as they meet the three requirements set forth by Congress and already described.
 
 
 20
 This court has held that the requirement that counsel fees be repaid to the government is a proper condition of probation. United States v. Santarpio, 560 F.2d 448 (1st Cir.), cert. denied, 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977). Although the case contains language consistent with our present view, Santarpio is a pre-guideline case and we have preferred therefore to make our own analysis of the statute and guidelines. However, it is worth adding that we are not persuaded by the Ninth Circuit's decision in United States v. Eyler, 67 F.3d 1386 (9th Cir.1995), which holds that repayment of counsel fees cannot be made a condition of supervised release and says without explanation that such a condition does not serve the purposes of deterrence.[4]
 
 
 21
 To say that repayment of counsel fees is a permissible condition of probation or supervised release is a different question from whether such a condition is wise, an issue that is primarily one for the district court. Here, no such objection was made in the district court. In any case, the record there showed that Merric was about to receive a large sum in back payments for social security disability--some of it seemingly for a period in which the government was maintaining him in a prison hospital at Buttner--and the district court was told nothing that would reasonably have given it pause in requiring that a small portion of the $20,000 back payment should reimburse the Treasury for what it had just spent on Merric's behalf to provide him with counsel.
 
 
 22
 Obviously, a court could not properly make it a condition of probation or supervised release that a penniless defendant make immediate payments, nor can we imagine sending defendant back to jail where he had done his best to comply with an installment schedule. See Santarpio, 560 F.2d at 455. Further, there may be circumstances in which requiring repayment of counsel fees even on an installment basis would interfere with the defendant's other obligations (such as paying fines or support payments). Here, the amount in question was modest and well covered by the prospective back payments for social security.
 
 
 23
 Merric draws our attention to a Judicial Conference recommendation which urges as a matter of policy that repaying the cost of counsel "should not be made a condition of probation."[5] The reason for the recommendation is unclear: possibly the Judicial Conference had primarily in mind the risk that a defendant, otherwise eligible for probation, might be denied this opportunity for lack of funds. It is also possible that the Judicial Conference was concerned with discouraging a defendant from accepting appointed counsel, although this seems unlikely since acquittal is usually a defendant's main objective.
 
 
 24
 In all events, while the views of the Judicial Conference are entitled to respectful attention on any matter--and on a few matters have binding legal force--the lawfulness of particular conditions of probation and supervised release are governed solely by statute and by the guidelines of the Sentencing Commission.[6] Further, we are here dealing with supervised release and, in the absence of explicit rationale for the Judicial Conference recommendation, we have no idea whether its reasons also apply to supervised release or to a case in which the defendant has virtually in hand the money necessary to repay counsel fees. Accordingly, the recommendation does not control in this case.
 
 
 25
 There is one final matter to address. At oral argument Merric's able counsel informed the court that it now appears that very expensive drugs are important in controlling Merric's schizophrenia and that he may not be able to afford these drugs, which could increase his ability to function lawfully in society. Candidly admitting that this issue had never been presented to the district court, defense counsel urged that this unusual need ought to be taken into account in assessing Merric's ability to pay the $4,000 fine (and so far as appears, this same argument can be made as to counsel fees).
 
 
 26
 The government responded at oral argument that avenues exist for Merric to raise this medical-need issue in the district court even after the judgment becomes final, but our own preliminary review suggests to us that the district court might have little flexibility to remit or reduce the fine if we simply affirmed. Seemingly, 18 U.S.C. § 3573 does no more than permit the government to move to remit unpaid portions of a fine or a special assessment where "reasonable efforts to collect ... are not likely to be effective." Fed.R.Crim.P. 35(b) also permits the government to move for a reduction in sentence but only where the defendant provides substantial assistance.
 
 
 27
 Needless to say, Merric's need for medicine, assuming the allegations are true, does not in any way invalidate any of the payment obligations imposed by the district court, the issue having never been raised and there being no plain error on this record. However, we have already concluded that the judgment should be remanded to correct the judgment on the delegation issue, and we have broad authority to shape a remand in the interests of justice. See 28 U.S.C. § 2106. Exercising this authority, we expressly give the district court leave to consider any argument based on Merric's alleged need for medicine.
 
 
 28
 Merric has not argued either in the district court or on this appeal that consideration of Merric's back payments for social security disability--merely to determine his ability to pay a fine or repay counsel fees--is at odds with the anti-assignment provision of the social security statute. 42 U.S.C. § 407. The point is an obscure one, raised more by case law[7] than statutory language; and we take no position on it since there is certainly no plain error. However, again in the interests of justice, the district court is free to consider the matter if it chooses.
 
 
 29
 The sentence but not the conviction is vacated, and the matter is remanded to the district court for further proceedings consistent with this opinion.
 
 
 30
 It is so ordered.
 
 
 
 *
 Hon. John R. Gibson, of the Eighth Circuit, sitting by designation
 
 
 [1]
 E.g., United States v. Miller, 77 F.3d 71, 77-78 (4th Cir.1996) (holding that "a district court may not delegate its authority to set the amount and timing of fine payments to the Bureau of Prisons or the probation officer"); United States v. Kassar, 47 F.3d 562, 568 (2d Cir.1995) (holding that "the district court may not authorize a probation officer to make post-sentencing decisions as to either the amount of the restitution or the schedule of installment payments ... [because the district court] cannot delegate the judicial functions inherent in the grant of restitution to the probation department") (internal quotations omitted). See also United States v. Ahmad, 2 F.3d 245, 248-49 (7th Cir.1993) (concerning authority to fix schedules for restitution payments)
 
 
 [2]
 That provision reads: "Whenever ... the court finds that funds are available for payment from or on behalf of a person furnished representation, it may authorize or direct that such funds be paid to the appointed attorney ... or to the court for deposit in the Treasury as a reimbursement to the appropriation, current at the time of payment, to carry out the provisions of this section."
 
 
 [3]
 Compare United States v. Evans, 155 F.3d 245, 250-51 (3d Cir.1998) (repayment of counsel fees impermissible condition of supervised release); United States v. Eyler, 67 F.3d 1386, 1393 (9th Cir.1995) (same); United States v. Turner, 628 F.2d 461, 466-67 (5th Cir.1980), cert. denied, 451 U.S. 988, 101 S.Ct. 2325, 68 L.Ed.2d 847 (1981) (repayment of counsel fees impermissible condition of probation), with United States v. Gurtunca, 836 F.2d 283, 288-89 (7th Cir.1987) (repayment of counsel fees permissible condition of probation); United States v. Santarpio, 560 F.2d 448, 455-56 (1st Cir.), cert. denied, 434 U.S. 984, 98 S.Ct. 609, 54 L.Ed.2d 478 (1977) (same)
 
 
 [4]
 The Third Circuit has recently joined the Ninth in rejecting counsel fees as a condition of supervised release. United States v. Evans, 155 F.3d 245, 250-51 (3d Cir.1998). The Third Circuit has taken a similar view in a different context, saying there is "no reason" to believe that assessing the costs of imprisonment deters criminal conduct. United States v. Spiropoulos, 976 F.2d 155, 164-69 (3d Cir.1992). Whether or not this proposition "leaves us flabbergasted," as it did Judge Easterbrook, Turner, 998 F.2d at 536, we do think that any substantial financial penalty has to be regarded as a deterrent
 
 
 [5]
 See Guidelines for the Administration of the Criminal Justice Act, 7 Guide to Judiciary Policies and Procedures 20 (1990). The full recommendation states that 18 U.S.C. § 3006A(f) does not itself authorize reimbursement as a condition of probation, which is self-evident from a reading of the statute, but the balance of the recommendation is hortatory
 
 
 [6]
 The only specific authority arguably pertinent allows the Judicial Conference to regulate plans for representation of the indigent, 18 U.S.C. § 3006A(h), but that power has been treated by the case law case as primarily addressed to the administrative aspects of representation. E.g., United States v. Gonzales, 150 F.3d 1246, 1258 (10th Cir.1998)
 
 
 [7]
 Cf. Hisquierdo v. Hisquierdo, 439 U.S. 572, 576, 583, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979); United States v. Smith, 47 F.3d 681, 683-84 (4th Cir.1995). See generally Splude v. Apfel, 165 F.3d 85 (1st Cir.1999)