**CAPITOL RECORDS, INC.,**
et al., Plaintiffs,

v.

**Noor ALAUJAN, Defendant.**

**Sony BMG Music Entertainment,**
et al., Plaintiffs,

v.

**Joel Tenenbaum, Defendant.**

Civ. Action Nos. 03cv11661–
NG, 07cv11446–NG.

United States District Court,
D. Massachusetts.

Jan. 14, 2009.

LLP, Gabriel M. Helmer, Colin J. Zick, Foley Hoag LLP, Simon B. Mann, Arnowitz & Goldberg, Boston, MA, Jeffrey C. Blair, Richard L. Gabriel, Holme Roberts & Owen LLP, Denver, CO, Diane Cabell, Cambridge, MA, Thomas J. Perrelli, Jenner & Block LLP, Washington, DC, Timothy M. Reynolds, Holme Roberts & Owen LLP, Boulder, CO, for Plaintiffs.

Michelle Bennett, U.S. Department of Justice, Civil Division, Washington, DC, for Interested Party.

Charmaine M. Blanchard, John J. McGlynn, Jr., Law Office of John J. McGlynn, Jr., Salem, MA, Paul G. Boylan, Donovan & Hatem, LLP, Charles M. Campo, Jr., Campo Anderson, LLP, George P. Field, Verrill Dana, LLP, Daniel J. Gleason, Rebecca L. Sipowicz, Nutter, McClennen & Fish, LLP, Daryl J. Lapp, Edwards Angell Palmer & Dodge, LLP, Kenneth J. Parsigian, Goodwin Procter, LLP, Raymond Sayeg, Jr., Law Office of Raymond Sayeg, Emily J. Schaffer, Kerry L. Timbers, Bromberg & Sunstein LLP, Seth M. Yurdin, Boston, MA, Charles J. DiMare, Antonino & DiMare & Legal Services Office, Lisa G. Kent, Student Legal Services Office, Univ. of MA, Amherst, MA, Daniel T. Doyle, Daniel T. Doyle PC, Blackstone, MA, Douglas T. Evans, Topsfield, MA, George W. Gray, Jr., Law Office of George W. Gray Jr., Amesbury, MA, Michael A. Kehoe, Patridge Snow & Hahn LLP, Bedford, MA, Charles M. MacLean, Framingham, MA, Michael Manzi, Law Office of Michael Manzi, Lawrence, MA, Charles Nesson, Harvard Law School, Cambridge, MA, John J. Regan, Dolan and Regan, Peabody, MA, Paul A. Shneyer, Shneyer & Associates Ltd., New York, NY, Jonathan E. Tobin, Finneran, Byrne & Drechsler, Dorchester, MA, Ronald N. Whitney, Law Office of Ronald N. Whitney, Whitman, MA, for Consolidated Defendants.

---

Terence K. Ankner The Law offices of Partridge, Ankner & Horstmann, LLP, Boston, MA, for defendant.

John R. Bauer, Nancy M. Cremins, Christopher S. Feudo, Robinson & Cole LLP, Daniel J. Cloherty, Dwyer & Collora

Eve G. Burton, Katheryn J. Coggon, Holme Roberts & Owen LLP, Denver, CO, Melissa M. D'Alelio, Claire E. Newton, Robinson & Cole LLP, Boston, MA, for All Plaintiffs (Counter Defendant).

Steven Karol, Karol & Karol, Milton, MA, for Counter Claimant.

John Palfrey, Cambridge, MA, Mary T. Sullivan, Segal Roitman LLP, Mark A. Walsh, Dewey & LeBoeuf LLP, Boston, MA, Amicus.

Laurie Rust, Holme Roberts & Owen LLP, Denver, CO, for Counter Defendant.

William H. Sims, Sims & Sims, LLP, Brockton, MA, pro se.

## ORDER RE: MOTION TO RECORD AND NARROWCAST HEARING

GERTNER, District Judge:

The Defendant's Motion to Permit Audio–Visual Coverage by the Courtroom View Network ("CVN") (document # 718) of the January 22, 2009, hearing over a secure internet connection is **GRANTED**. CVN will "narrowcast" the audio-visual coverage to the website of the Berkman Center for Internet and Society, which will make the recording publicly available for all non-commercial uses via its website.

## I. INTRODUCTION

This case, like many others now before the Court, is one for copyright infringement under 17 U.S.C. § 106. The Plaintiffs are some of the nation's largest record companies. The Defendants in these consolidated cases are individual computer users—mainly college students—who, the Plaintiffs claim, used "peer-to-peer" file-sharing software to download and disseminate music without paying for it, infringing the Plaintiffs' copyrights. Many of the Defendants have defaulted or settled, largely without the benefit of counsel, subject to damages awards between $3,000 and $10,000.

Joel Tenenbaum ("Tenenbaum") is one of the few defendants represented by counsel, Professor Charles Nesson of Harvard Law School and the Berkman Center for Internet and Society. He has chosen to challenge the action through a Motion to Amend Counterclaims (document # 686), his Opposition to the Plaintiffs' Motion to Dismiss Counterclaims (document # 676), and a Motion to Join the Recording Industry Association of America ("RIAA") (document # 693), all of which will be heard on January 22, 2009. Whether those counterclaims survive or not, he will proceed to a jury trial in this Court currently scheduled for March 30, 2009. While Tenenbaum's Motion to Permit Audio–Visual Coverage by CVN (document # 718) is directed to all proceedings going forward, this Order addresses only the proceeding on January 22, 2009, where legal arguments on the motions above will be heard.

In many ways, this case is about the so-called Internet Generation—the generation that has grown up with computer technology in general, and the internet in particular, as commonplace. It is reportedly a generation that does not read newspapers or watch the evening news, but gets its information largely, if not almost exclusively, over the internet. *See generally* Martha Irvine, *Generation Raised Internet Comes of Age*, MSNBC.com, Dec. 13, 2004, *http://www.msnbc.msn.com/id/6645963/*. Consistent with the nature of these file-sharing cases, and the identity of so many of the Defendants, this case is one that has already garnered substantial attention on the internet.

While the Plaintiffs object to the narrowcasting of this proceeding, *see* Pl. Resp. to Mot. to Allow CVN to Provide Coverage (document # 728), their objections are curious. At previous hearings

and status conferences, the Plaintiffs have represented that they initiated these lawsuits not because they believe they will identify every person illegally downloading copyrighted material. Rather, they believe that the lawsuits will deter the Defendants and the wider public from engaging in illegal file-sharing activities. Their strategy effectively relies on the publicity resulting from this litigation.[1]

■ Nothing in the local rules of the District Court of Massachusetts, the policies of the Judicial Council for the First Circuit, life, or logic suggests that this motion should be denied. As Judge Weinstein noted: "No reason has been suggested to depart from the policy that, in general, the public should be permitted and encouraged to observe the operation of its courts in the most convenient manner possible, so long as there is no interference with the due process, the dignity of the litigants, jurors, and witnesses, or with other appropriate aspects of the administration of justice." *In re Zyprexa Products Liability Litigation,* 2008 WL 1809659 (E.D.N.Y. Mar. 4, 2008) (citing Diane L. Zimmerman et al., *Let the People Observe Their Courts,* 61 Judicature 156

(1977)); *see also* Robert Barnes, *A Renewed Call To Televise High Court,* Wash. Post, February 12, 2007 at A15 ("The two newest justices, Roberts and Samuel A. Alito Jr., sounded open to the possibility during their confirmation hearings, and Alito favored allowing cameras in his previous job as an appellate court judge.").

Much like the proceedings before then-Judge Alito and audio-visual coverage of legal arguments in Courts of Appeals around the country, the district court hearing now at issue involves *only* legal argument. Moreover, coverage will be "gavel to gavel"—streaming a complete recording of the hearing to a publicly available website—not edited for an evening news soundbite. The public benefit of offering a more complete view of these proceedings is plain, especially via a medium so carefully attuned to the Internet Generation captivated by these file-sharing lawsuits.

## II. DISCUSSION

Local Rule 83.3(a) permits the recording and broadcast of courtroom proceedings in certain circumstances expressly enumerated in the Local Rules, *see* D. Mass. Local R. 83.3(a)-(d), *or* "by order of the court." [2]

---

1. It is possible the Plaintiffs have now changed their minds about the virtues of this strategy. *See* Sarah McBride and Ethan Smith, *Music Industry to Abandon Mass Suits,* Wall St. J., Dec. 19, 2008, *available at http:// online.wsj.com/article/SB122966038 836021137.html.*

2. Local Rule 83.3 provides in relevant part:
   (a) **Recording and Broadcasting Prohibited.** Except as specifically provided in these rules or by order of the court, no person shall take any photograph, make any recording, or make any broadcast by radio, television, or other means, in the course of or in connection with any proceedings in this court, on any floor of any building on which proceedings of this court are or, in the regular course of the business of the court, may be held. . . .

(b) **Voice Recordings by Court Reporters.** Official court reporters are not prohibited by section (a) from making voice recordings for the sole purpose of discharging their official duties. No recording made for that purpose shall be used for any other purpose by any person.
(c) The court may permit (1) the use of electronic or photographic means for the preservation of evidence or the perpetuation of a record, and (2) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings.
(d) The use of dictation equipment is permitted in the clerk's office of this court by persons reviewing files in that office.
Effective September 1, 1990.

As written, this residual clause does not carry any limitation; instead, it assigns the decision to permit recording or broadcast to the discretion of the presiding district court judge.

■■■ The Court believes that the upcoming motion hearing is an instance where recording and broadcast falls squarely within the public interest. The First Amendment suggests that court proceedings be open to the public "whenever practicable." *In re Zyprexa Products Liability Litigation*, 2008 WL 1809659 (E.D.N.Y. Mar. 4, 2008) (permitting recording of district court proceedings). As the Supreme Court noted in *Craig v. Harney*, 331 U.S. 367, 374, 67 S.Ct. 1249, 91 L.Ed. 1546 (1947), "[a] trial is a public event. What transpires in the courtroom is public property."

■ "Public" today has a new resonance, especially in this case. The claims and issues at stake involve the internet, file-sharing practices, and digital copyright protections. The Defendants are primarily members of a generation that has grown up with the internet, who get their news from it, rather than from the traditional forms of public communication, such as newspapers or television. Indeed, these cases have generated widespread public attention, much of it on the internet. Under the circumstances, the particular relief requested—"narrowcasting" this proceeding to a public website—is uniquely appropriate.

The Defendant has assured the Court that the recording and narrowcast of the January 22, 2009, hearing will be publicly available for all non-commercial uses via the Berkman Center's website at *http://cyber.law.harvard.edu/*. The January 22, 2009, hearing will include only oral argument by the attorneys representing the parties—no criminal defendants, jurors, or witnesses will be exposed to public view.[3] In fact, CVN intends to use unobtrusive cameras already installed in the courtroom, diminishing the likelihood that the recording will disrupt the Court's business. The coverage will be gavel-to-gavel, meaning that the Berkman Center will not edit the videostream in any way. Given the nature of this particular hearing, few factors counsel against allowing the proceeding to be broadcast, while the public has much to gain.

■ The Court recognizes that, despite a three-year experiment with courtroom cameras in the 1990s, the Judicial Conference continues to oppose the recording of district court proceedings in all but a narrow set of circumstances. *See* Administrative Office of the U.S. Courts, *Guide to Judiciary Polices and Procedures*, Vol. 1, Ch. 3, Part E.3.[4] The Conference permits

---

3. Moreover, the Court does not believe that *prospective* jurors are any more likely to be prejudiced by allowing the hearing to be recorded and made publicly available. As the Court has noted, this case has already generated widespread media attention quite aside from any courtroom recording. Should the case reach trial, jurors will be instructed to refrain from conducting any outside research into the litigation, exactly as they are already prohibited from accessing media accounts or other external sources of information.

4. The Judicial Conference policy statement only permits recording and broadcasting during "investitive, naturalization, or other ceremonial proceedings," or for (1) the presentation of evidence; (2) the perpetuation of the record of proceedings; (3) security purposes; (4) other purposes of judicial administration; and (5) the photographing, recording or broadcasting of appellate arguments. The policy statement appears to all but disregard the substantial similarity between appellate argument, which it allows to be broadcast, and a motion hearing before the district court. Both involve only oral argument by counsel; neither type of proceeding risks placing jurors, witnesses, or criminal defendants before courtroom cameras.

the broadcast of oral arguments in Courts of Appeals, at the discretion of the Court, but not analogous proceedings—oral arguments—in district court. *See News Release: Judicial Conference Acts on Cameras in Court,* Administrative Office of the U.S. Courts, Mar. 12, 1996 (document # 720–14). Although entitled to considerable weight, the position of the Judicial Conference opposing televised district court proceedings does not bind this Court. *See, e.g., United States v. Merric,* 166 F.3d 406, 412 (1st Cir.1999) (noting that "the views of the Judicial Conference are entitled to respectful attention," but are binding only on a few matters); *In re Cargill, Inc.,* 66 F.3d 1256, 1267 (1st Cir. 1995).

Pursuant to their own local rules, a number of individual district court judges in the Eastern and Southern District of New York have allowed specific hearings in civil cases to be recorded and broadcast since at least 1996. *See* E.D.N.Y. & S.D.N.Y. Civ. R. 1.8; *Marisol A. v. Giuliani,* 929 F.Supp. 660 (S.D.N.Y.1996) (Ward, J.); *Sigmon v. Parker Chapin Flattau & Klimpl,* 937 F.Supp. 335 (S.D.N.Y.1996) (Leisure, J.); *Katzman v. Victoria's Secret Catalogue,* 923 F.Supp. 580 (S.D.N.Y.1996) (Sweet, J.); *Hamilton v. Accu–Tek,* 942 F.Supp. 136 (E.D.N.Y.1996) (Weinstein, J.); *GVA Market Neutral Master Limited v. Veras Capital Partners,* No. 07–cv–00519 (S.D.N.Y.); *CCM Pathfinder Pompano Bay, LLC v. Compass Financial Partners LLC, et. al.,* No. 08–cv–05258 (S.D.N.Y.); *In re Zyprexa Products Liability Litigation,* 2008 WL 1809659 (E.D.N.Y.) (Weinstein, J.).

Indeed, after the *Marisol* case, in which Judge Ward permitted CVN coverage of a proceeding, the Judicial Conference approved a resolution in March 1996 "to strongly urge each circuit judicial council to adopt" Conference policy banning cameras, and to "abrogate any rules of court" that conflict with that policy. *See* 929 F.Supp. 660; *News Release: Judicial Conference Acts on Cameras in Court,* Administrative Office of the U.S. Courts, Mar. 12, 1996 (document # 720–14). To date, no circuit judicial council—including the First Circuit judicial council which binds this Court—has done so.[5]

Nothing indicates that the integrity of the proceedings or the interests of any party have been prejudiced by the use of courtroom cameras in these cases. The Plaintiffs' concern here that jurors will be prejudiced by internet coverage is specious. The judicial system relies on voir dire to ferret out those jurors who have followed a case, whether it be through newspapers, television, or now, the internet. The judicial system likewise relies on the good faith of jurors not to perform research about a case in any media format or other medium. Going forward, the Court will add an admonition about the internet to address concerns about juror exposure to previous coverage of the case, of whatever variety.

Under these circumstances and with the discretion afforded by Local Rule 83.3(a), the Court believes it is fully appropriate to allow the public a wider window into the judicial proceeding at hand.

### III. CONCLUSION

Based on the foregoing analysis, the Court **GRANTS** the Defendant's motion to

---

**5.** Much to the contrary, Congress has recently taken up legislation that would reverse Judicial Conference policy and allow cameras in the courtroom on a far more routine basis. *See* Sunshine in the Courtroom Act of 2008, S. 352, 110th Cong. (as reported by the S. Comm. on the Judiciary); Sunshine in the Courtroom Act of 2007, H.R. 2128, 110th Cong. (as reported by the H. Comm. on the Judiciary).

allow CVN to record and narrowcast the January 22, 2009 hearing (document # 718), subject to the following conditions:

1. This Order is limited to the January 22, 2009, hearing; the Court will address any further "narrowcasting" should that be necessary;

2. The CVN narrowcast is the *only* recording of the hearing allowed—no other private recording or broadcast, whether audio or visual, is permitted;

3. The Berkman Center for Internet and Society will act as a subscriber to the CVN narrowcast and will make the recording publicly available for all noncommercial uses via its website;

4. CVN will use the cameras already installed in Judge Gertner's courtroom (Courtroom 2), as indicated by Attorney Nesson at the January 13, 2009, telephonic conference;

5. The "narrowcast" will be gavel-to-gavel, with no editing by CVN or the parties; and

6. CVN will immediately contact Chris Gross, the Court's IT specialist, at chris_gross@mad.uscourts.gov to coordinate the narrowcast feed from the courtroom cameras.

**SO ORDERED.**