# United States Court of Appeals
## For the First Circuit

---

No. 09-1090

IN RE SONY BMG MUSIC ENTERTAINMENT ET AL.,

Petitioners.

---

PETITION FOR A WRIT OF MANDAMUS OR PROHIBITION TO THE UNITED
STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS

---

[Hon. Nancy Gertner, U.S. District Judge]

---

Before

Torruella, Selya and Lipez, Circuit Judges.

---

Daniel J. Cloherty, with whom Victoria L. Steinberg, Dwyer &
Collora, LLP, Eve G. Burton, Timothy M. Reynolds, Laurie J. Rust,
and Holme Roberts & Owen, LLP were on brief, for petitioners.
Charles R. Nesson for respondent Joel Tenenbaum.
Jonathan Sherman, with whom Dean Kawamoto, Melissa Felder, and
Boies, Schiller & Flexner LLP were on brief, for Courtroom View
Network, amicus curiae.
Matthew H. Feinberg, Feinberg & Kamholtz, Cindy Cohn, and Kurt
Opsahl on brief, for Electric Frontier Foundation,
Public.Resource.Org, Inc., Media Access Project, Internet Archive,
Free Press, California First Amendment Coalition, and Ben Sheffner,
amici curiae.

---

April 16, 2009

---

**SELYA**, **Circuit Judge**. This mandamus proceeding requires us to address a question of first impression: does a federal district judge have the authority to permit gavel-to-gavel webcasting of a hearing in a civil case?[1] The district court thought that it had that authority. Capitol Records, Inc. v. Alaujan, 593 F. Supp. 2d 319, 324-25 (D. Mass. 2009). After careful consideration, we hold that a local rule, applicable in this case, when read in conjunction with an announced policy of the Judicial Conference of the United States and a resolution of the First Circuit Judicial Council, precludes such an action. Accordingly, we forbid enforcement of the challenged order and remand for proceedings consistent with this opinion.

## I. BACKGROUND

Both the underlying case and the challenged order implicate nascent technologies. To furnish context to the latter, we sketch the factual background of the former.

---

[1] "Narrowcasting" and "webcasting" are two different things. Narrowcasting is the recording and live transmission of ongoing events over the Internet to a selected audience. Webcasting is the recording and live transmission of ongoing events over the Internet to a broad, undefined audience. Here, Courtroom View Network proposes to record and transmit the proceedings to a Harvard Law School site (narrowcasting) from which the proceedings will be streamed to a broader, undefined audience (webcasting). The district court's order sanctions this procedure.

Despite the technical difference between narrowcasting and webcasting, we use the terms interchangeably for ease in exposition.

Some time ago, certain record companies began to file infringement actions under the Copyright Act, 17 U.S.C. § 501, alleging that individual defendants (many of whom were students) had illegally used file-sharing software to download and disseminate copyrighted songs without paying royalties. This proceeding arises out of a consolidated set of such lawsuits. In those cases, an array of record companies, including the petitioners here — Sony BMG Music Entertainment, Warner Bros. Records, Inc., Atlantic Recording Corporation, Arista Records, LLC, and UMG Recordings, Inc. — sued a number of individuals as putative copyright infringers.

On December 23, 2008, the respondent, Joel Tenenbaum (one of the persons whom the record companies had sued), moved to permit Courtroom View Network to webcast a non-evidentiary motions hearing that was scheduled for January 22, 2009. The district court, citing the keen public interest in the litigation, granted the motion over the objection of the record company plaintiffs. Capitol Records, 593 F. Supp. 2d at 324-25.

The petitioners reacted to this order by asking this court to grant a writ of mandamus or prohibition. They argued, among other things, that (with certain exceptions not applicable here) Rule 83.3 of the Local Rules of the United States District Court for the District of Massachusetts prohibited webcasts of civil proceedings. As a supporting argument, they noted that a

-3-

stated policy of the Judicial Conference of the United States advocated a ban on the use of recording devices in federal courtrooms (other than for the preservation of trial evidence and the like). We invited the respondent to reply to the petition, accepted amicus briefs,[2] and assigned the matter for oral argument.

In a cooperative spirit, the district court stayed its narrowcasting order pending this court's review. The motions hearing is currently scheduled to take place on April 30, 2009.

## II. APPELLATE JURISDICTION

We ordinarily do not entertain arguments raised by amici and not by parties.[3] See Lane v. First Nat'l Bank, 871 F.2d 166, 175 (1st Cir. 1989). Here, however, that precept does not apply. When an issue relates to subject-matter jurisdiction, we are duty bound to address the issue even if the parties have eschewed it. See Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 5 (1st Cir. 2007). As we explain below, this is such a case.

---

[2] We also received and placed on file a letter dated January 29, 2009 from Congressman William D. Delahunt. We greatly appreciate the insights offered by the amici and by Representative Delahunt.

[3] To be sure, the respondent purports to "adopt" all the arguments set out in the amicus briefs without making the arguments himself. But the respondent makes only a cursory, broad-brush allusion to this effect. We have held that this type of generalized reference is insufficient to place the putative adopter's weight behind the argument. See R.I. Dep't of Envtl. Mgmt. v. United States, 304 F.3d 31, 47 n.6 (1st Cir. 2002); see also Mass. Food Ass'n v. Mass. Alcoholic Bev. Control Comm'n, 197 F.3d 560, 568 (1st Cir. 1999).

-4-

The issue is this: some of the amici contend that narrowcasting (and, thus, the challenged order) does not threaten the petitioners with any irreparable harm. On that basis, they posit that relief in the nature of a prerogative writ is unavailable. See, e.g., In re United States, 426 F.3d 1, 5 (1st Cir. 2005) (explaining that supervisory mandamus is traditionally available where judicial power has been exceeded, there is a threat of irreparable harm, and the underlying order is palpably erroneous); United States v. Horn, 29 F.3d 754, 769 (1st Cir. 1994) (same). Because this argument is couched in jurisdictional terms, we must confront it.

Having reached the issue, we can dispatch it with ease. The jurisdictional argument, whatever its provenance, is without merit.

This case does not involve our general mandamus jurisdiction but, rather, fits within the contours of our advisory mandamus jurisdiction. Under that rubric, we may entertain a petition that "presents a systemically important issue as to which this court has not yet spoken." In re Atlantic Pipe Corp., 304 F.3d 135, 140 (1st Cir. 2002) (citing In re Prov. Journal Co., 293 F.3d 1, 9 (1st Cir. 2002)).[4] The power of a district court to

_____

[4] Advisory mandamus is different than supervisory mandamus. Supervisory mandamus "is used when an appellate court issues the writ to correct an established trial court practice that significantly distorts proper procedure." Horn, 29 F.3d at 769 n.19.

order narrowcasting of a hearing in a civil case is such an issue: it is systemically important and rife with implications for the public interest. In the absence of definitive guidance from this court, the issue is increasingly likely to recur within the district courts of this circuit. These circumstances counsel in favor of an exercise of our advisory mandamus jurisdiction. See, e.g., In re Sterling-Suarez, 306 F.3d 1170, 1172 (1st Cir. 2002).

In making this determination, we are cognizant that prerogative writs are strong medicine and, as such, should be dispensed sparingly. In re Pearson, 990 F.2d 653, 656 (1st Cir. 1993). But even while subscribing to that tenet, we believe that this is an appropriate case in which to consider granting the writ. Both the rapidity of technological change and the widespread interest that this proceeding has attracted argue persuasively for a prompt and authoritative resolution of the systemically important issue that lies at the epicenter of this dispute.

Our conclusion that this case falls within the compass of advisory mandamus answers the jurisdictional question. When advisory mandamus is in play, a demonstration of irreparable harm is unnecessary. In re Sterling-Suarez, 306 F.3d at 1172. It follows inexorably that we have jurisdiction over this petition.

**III. ANALYSIS**

Our task here is limited to the use of webcasts in federal civil proceedings. All forms of broadcasting are expressly

proscribed in federal criminal cases, see Fed. R. Crim. P. 53, but that prohibition does not apply here.

In order to determine whether webcasts of civil proceedings are permissible in a federal district court, the logical starting point is the district court's local rules. Here, there is a controlling rule: Local Rule 83.3 of the United States District Court for the District of Massachusetts. The text of that rule is reprinted in Appendix A.

In the court below, the district judge interpreted this rule as creating a discretionary catchall exception to the rule's general prohibition against the broadcasting of court proceedings. This interpretation would allow a district judge in an individual case to determine, as a matter of discretion, whether to permit the broadcasting of all or any part of the proceedings. That discretion would have no text-based restrictions. In that sense, it would be limitless.

The district judge in this case made exactly that kind of ad hoc, case-specific determination. The petitioners vigorously contest the expansive construction of the rule that underlies this free-flowing discretion.

We are reluctant to interfere with a district judge's interpretation of a rule of her court, especially one that involves courtroom management. See, e.g., Sánchez-Figueroa v. Banco Popular, 527 F.3d 209, 213 (1st Cir. 2008), cert. denied, 129 S. Ct. 1328

(2009).  Our standard of review reflects this deferential approach: the "application of a district court's local rule[s] is reviewed for abuse of discretion" but with "a special degree of deference." Crowley v. L.L. Bean, Inc., 361 F.3d 22, 25 (1st Cir. 2004).

Be that as it may, deference cannot be equated with a total abdication of an appellate court's responsibility to undertake a meaningful review of a lower court decision.  Here, we think that the limits of the district judge's discretion were exceeded; her interpretation of Local Rule 83.3 is unprecedented and, in our view, palpably incorrect.

To begin, the district court's interpretation of the local rule renders subsection (c) of that rule wholly superfluous. If, as the court's discussion suggests, a district judge has wide-ranging discretion to permit civil proceedings to be broadcast, there would be no reason for the inclusion of a proviso which, like subsection (c), states that the court may permit broadcasting in certain enumerated instances (e.g., during ceremonial proceedings, for the preservation of evidence, for perpetuation of a record). It is a familiar canon of construction that every word and phrase in a statute or rule should, if possible, be given effect.  See, e.g., Aquilar v. United States ICE, 510 F.3d 1, 10 (1st Cir. 2007); United States v. Ven-Fuel, Inc., 758 F.2d 741, 751-52 (1st Cir. 1985).  We think that canon has great force here.

The respondent's principal riposte is that a narrower interpretation of Rule 83.3, one that effectively limits a district judge's discretion to a few enumerated types of occurrences, adds words to the rule. This argument rests on the premise that if the drafters intended to restrict the broadcasting of civil proceedings to those settings, the phrase "or by order of the court" would in all likelihood have been cabined further, such as by adding a subordinate clause like "as permitted in subsection (c) below."

That argument demands too much of the rule's drafters. Without any additional restriction, the narrower interpretation yields a sensible and coherent construction of the rule, with all of its parts fitting seamlessly together. This construction is fully consistent with the title of the rule's first subsection, which reflects an intention broadly to prohibit the "[r]ecording and [b]roadcasting" of civil proceedings. D. Mass. R. 83.3(a). A court may consider a rule's title in fixing its meaning, see E. Mt. Platform Tennis, Inc. v. Sherwin-Williams Co., 40 F.3d 492, 499 (1st Cir. 1994) (stating a similar principle with respect to statutory construction), and we deem it appropriate to do so here.

The structure of Rule 83.3 also favors a narrow interpretation. After formulating a broad prohibition, the rule sets out two exceptions, followed by a reaffirmation of the overall prohibition. The first exception — "[e]xcept as specifically provided in these rules" — refers to such things as voice recordings

-9-

by court reporters and the use of dictation equipment in the clerk's office. Characteristically, these situations are not subject to pre-approval by the district judge.

The second exception — "by order of the court" — refers to the discretionary orders described in subsection (c); that is, orders relating to the preservation of evidence, the perpetuation of records, and the communication or memorialization of investitive, ceremonial, or naturalization proceedings. Authorization of actions in these situations requires specific approval by the district judge on a case-by-case basis. The more expansive construction favored by the district judge would blur these lines.

Given the structure of the rule as a whole, it is logical to conclude that the phrase "by order of the court" does not create a free-floating bubble of discretion but, rather, is confined to those situations set out in subsection (c).[5]

The respondent and the amici rely on the practice in two other districts. Specifically, they advert to the allowance of webcasting by district courts in those districts. In our view, this analysis is beside the point. Both of the courts to which we have been referred permit webcasting under a local rule, common to the

---

[5] The decision in Chevron U.S.A. Inc. v. Echazabal, 536 U.S. 73 (2002), is not to the contrary. There, the Court interpreted the term "may include" expansively, in part because the "statutory language suggesting exclusiveness [was] missing. . . ." Id. at 81. Here, the rule contains prohibitory language indicating that the discretion afforded by the rule is limited.

two districts — two out of the ninety-four districts in the federal system — that differs substantially from D. Mass. R. 83.3. That exogenous rule, as interpreted locally, allows the broadcasting of proceedings on order of a district judge. See S.D.N.Y. R. 1.8; E.D.N.Y. R. 1.8; see also In re Zyprexa Prods. Liab. Litig., No. 04-MD-1596, 2008 WL 1809659, at *1 (E.D.N.Y. Mar. 4, 2008). Because Local Rule 83.3 contains no comparable grant of unbounded discretion, the practice in those courts does not bolster the respondent's cause.[6]

We add, moreover, that a narrow interpretation of Local Rule 83.3 is strongly supported by a policy adopted by the Judicial Conference of the United States. The Judicial Conference is the principal policymaking body for the federal courts. Although the Conference's policies are generally not binding ex proprio vigore on individual district courts, those policies are at the very least entitled to respectful consideration. United States v. Merric, 166 F.3d 406, 412 (1st Cir. 1999). In other words, when the Judicial Conference promulgates a policy, that policy, even if not binding

---

[6] At oral argument, some counsel suggested that the routine use of broadcasting techniques to allow viewing of court proceedings in "overflow rooms" within the courthouse opens the door for webcasting. We believe that such usages, within the courthouse and wholly under the control of the court, are easily distinguishable from webcasting. A real extension of the physical dimensions of the courtroom within the courthouse is materially different than a virtual extension of the courtroom to include a limitless outside audience located throughout the world.

in the strictest sense, is not lightly to be discounted, disregarded, or dismissed.

So it is here. In October of 1988, the Judicial Conference launched an investigation into the advisability of allowing cameras in the courtroom. See Report of the Proceedings of the Judicial Conference of the United States (Report), Mar. 14, 1989, at 34. Pilot programs were inaugurated in several courts (including the District of Massachusetts).[7] When the dust settled, the Judicial Conference concluded "that the intimidating effect of cameras" in the courtroom presented "cause for concern." Report, Sept. 20, 1994, at 46. The Conference previously had adopted a policy hostile to the use of cameras in the courtroom at about the same time as the District of Massachusetts adopted Local Rule 83.3 (in September of 1990).

Then, it adopted a slightly modified version of the policy in 1996. The Conference published that iteration of the policy in the Guide to Judiciary Policies and Procedures (Guide), Vol. 1, Ch. 3, Pt. E.3. This version of the policy, which remains in effect, is reprinted in Appendix B.

---

[7] To implement the pilot program, the United States District Court for the District of Massachusetts adopted Local Rule 83.3.1 (now expired). That "pilot program" rule was adopted simultaneous with Local Rule 83.3 (albeit with a later effective date). This sequence of events reinforces our interpretation of Local Rule 83.3, as there would have been no need for the adoption of a separate "pilot program" rule if the district court had unbounded discretion to allow telecasting and recording.

The commentary to the policy is instructive. It leaves no doubt but that, apart from the enumerated exceptions, "the Conference policy does not authorize the contemporaneous photographing, recording, or broadcasting of proceedings from the courtroom to the public beyond the courthouse walls." Id. Pt. E.4. To emphasize this point, the commentary adds that "[t]he Judicial Conference remains of the view that it would not be appropriate to require . . . non-ceremonial proceedings to be subject to media broadcasting." Id.

The publication of the policy in the Guide is itself significant. The Guide "is the official medium by which direction as to courtroom procedures and other information are provided to the Federal Judiciary in support of its day-to-day operations." Kitzmiller v. Dover Area Sch. Dist., 388 F. Supp. 2d 484, 486-87 (M.D. Pa. 2005). It also codifies the policies that are approved by the Judicial Conference of the United States.

In construing Local Rule 83.3, the Judicial Conference's unequivocal stance against the broadcasting of civil proceedings (save for those few exceptions specifically noted in the policy itself), is entitled to substantial weight. A narrow interpretation of the local rule is consistent with this policy. Conversely, an expansive interpretation of the local rule is at war with the policy. Under these circumstances, we believe that the district court, institutionally, would construe its rule to avoid a head-on

-13-

clash with the national standard.  In all events, we interpret the local rule that way.

A second source of support for a narrow interpretation of Local Rule 83.3 derives from the archives of the First Circuit Judicial Council.  Some background is needed to put the circuit council's action into perspective.

28 U.S.C. § 2071 governs the rulemaking power of the district courts.  Any rule prescribed by a district court "shall remain in effect unless modified or abrogated by the judicial council of the relevant circuit."  Id. § 2071(c)(1).  The commentary to the Judicial Conference's policy on broadcasting "urges" circuit councils to adopt measures reflecting the Conference's flat prohibition of broadcasting and to abrogate any district court rule antithetic to that policy.

In furtherance of the Judicial Conference's exhortation, the First Circuit Judicial Council adopted a resolution in June of 1996.  The text of the resolution is reprinted in Appendix C.[8]

The aim of the resolution is explicit: the broadcasting of court proceedings is prohibited.  That aim is fully consistent with Local Rule 83.3 as we interpret it.

---

[8] Due to an indexing problem and through no fault of the parties or the district judge, no reference was made to this resolution in the lower court.  We rectified this oversight and issued a supplemental briefing order to enable the parties and the amici to submit their views about it.

The respondent and the amicus Courtroom View Network assert that the resolution is impuissant because it was passed without either prior notice or an opportunity for public comment. See 28 U.S.C. § 332(d)(1). The record is unclear as to whether there was notice and comment. Assuming for argument's sake that there was none, the assertion nonetheless misses the mark.

The circuit council reviewed Local Rule 83.3. It obviously read the local rule as we read the rule today. That review presumably was conducted pursuant to 28 U.S.C. § 332(d)(4), which mandates that a circuit council "shall periodically review" the local rules of the district courts within the circuit and "modify or abrogate any such rule" where necessary. There is no requirement that the results of such a review must be put out for public comment if the review itself does not purpose to modify or abrogate the rule(s) reviewed. The council's resolution in this instance did not seek to modify or abrogate any local rule but, rather, endorsed existing practice in the districts within the circuit (including the District of Massachusetts). It follows that the passage of the resolution did not require prior notice, an opportunity for public comment, or any exercise of the circuit council's powers under section 332(d)(1).[9]

_____

[9] The respondent and the amicus suggest that the resolution modifies or abrogates the local rule because it omits any reference to certain permitted or potentially permitted uses (e.g., the deployment of security cameras; the photographing of naturalization proceedings). We reject this suggestion. The resolution is a

-15-

We add a coda. At the very least, the resolution unambiguously declares the sentiment of the circuit council and demonstrates its reading of Local Rule 83.3. Thus, even if the resolution was deficient in some technical sense, its existence nonetheless would support a narrow interpretation of Local Rule 83.3.

Either way, the resolution is powerful evidence of the meaning and purport of the local rule. The First Circuit Judicial Council followed the Judicial Conference's lead and made its position abundantly clear. We hardly think that a district court within the circuit would have stood silently by if it believed that the circuit council had misread its local rule.

In this case, then, all roads lead to Rome. It is perfectly clear that the local rule, the Judicial Conference policy, and the circuit council resolution are cut from the same cloth. We think that they must be construed in pari materia. Separately and collectively, the three statements undermine the district judge's assertion of authority to allow webcasting.

The respondent has an odd rejoinder to the combined force of the local rule, the Judicial Conference policy, and the circuit

_____

broad statement that approves and endorses the way in which district courts within the circuit were then (and are now) handling the sensitive issue of the threatened intrusion of television and radio technologies into the courtroom. There is no indication that the resolution was in any way aimed at altering existing practice.

council resolution. He suggests that reading these offerings together to deny all discretion to a trial judge to permit Internet access to her courtroom unlawfully burdens a litigant's right to a public trial in the federal courts.

The respondent bases this suggestion on the Supreme Court's decision in Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555 (1980). That decision confirms the public's right to attend trials, id. at 574 (opinion of Burger, C.J., joined by White and Stevens, JJ.). While the new technology characteristic of the Information Age may call for the replotting of some boundaries, the venerable right of members of the public to attend federal court proceedings is far removed from an imagined entitlement to view court proceedings remotely on a computer screen. Because there is no hint here that any portion of the proceedings will be closed to the public, the Richmond Newspapers right is not in jeopardy.

Next, we must examine a possible semantic loophole, emphasized by the respondent during oral argument. At first blush, it is not obvious that either the Judicial Conference policy or the First Circuit Judicial Council resolution covers the situation at hand. After all, the policy speaks pertinently in terms of "televising" and the resolution speaks pertinently in terms of "radio and televison coverage" of district court proceedings. Because neither of them say anything about Internet transmittals, the respondent posits that webcasting is different in kind from the

-17-

array of proscribed techniques (and, thus, not affected by either the policy or the resolution).

On close perscrutation, that contention comes to naught. The difference between televising and webcasting is one of degree rather than kind. Both are broadcast mediums. The absence of a specific reference to webcasting is not telling; both at the time when the policy was promulgated and at the time when the resolution was adopted, Internet webcasting had not attained the ubiquity that currently prevails. What is more significant is that the intention of both the Judicial Conference, and the circuit council is transparently clear. That intention is to forbid all broadcasting of federal district court proceedings in civil cases, save only for the enumerated exceptions. The webcasting that the district court authorized contravenes that intention.

The sockdolager lies in the text of D. Mass. R. 83.3. The local rule is broader in its prohibitions than either the policy or the resolution. In terms, it forbids the making of "any broadcast by radio, television, or other means . . . ." D. Mass. R. 83.3(a) (emphasis supplied). Thus, the rule bars more than conventional television broadcasting. Webcasting plainly falls within its scope.

**IV. CONCLUSION**

We are mindful that good arguments can be made for and against the webcasting of civil cases. We are also mindful that

-18-

emerging technologies eventually may change the way in which information — including information about court cases — historically has been imparted.  Yet, this is not a case about free speech writ large, nor about the guaranty of a fair trial, nor about any cognizable constitutional right of public access to the courts.  Our purview here is much more confined: this is a society dedicated to the rule of law; and if a controlling rule, properly interpreted, closes federal courtrooms in Massachusetts to webcasting and other forms of broadcasting (whether over the air or via the Internet), we are bound to enforce that rule.  In the last analysis, this boils down to a case about the governance of the federal courts.

We need go no further.  For the reasons elucidated above, we conclude that the district court's order of January 14, 2009, which purposed to permit webcasting of a motions hearing in a civil case, was based on a palpably incorrect interpretation of D. Mass. R. 83.3.  Consequently, we exercise our advisory mandamus authority, prohibit enforcement of the challenged order, and remand the case for further proceedings consistent with this opinion.

**<u>Petition granted</u>**.

# APPENDIX A

## Rule 83.3 Photographing, Recording and Broadcasting

**(a) Recording and Broadcasting Prohibited.** Except as specifically provided in these rules or by order of the court, no person shall take any photograph, make any recording, or make any broadcast by radio, television, or other means, in the course of or in connection with any proceedings in this court, on any floor of any building on which proceedings of this court are or, in the regular course of the business of the court, may be held. This prohibition shall apply specifically but shall not be limited to the second, third, ninth, eleventh, twelfth, thirteenth, fifteenth, sixteenth, eighteenth, nineteenth and twentieth floors of the John W. McCormack Post Office and Courthouse Building in Boston and the fifth floor of the Courthouse Building in Springfield.

**(b) Voice Recordings by Court Reporters.** Official court reporters are not prohibited by section (a) from making voice recordings for the sole purpose of discharging their official duties. No recording made for that purpose shall be used for any other purpose by any person.

**(c)** The court may permit (1) the use of electronic or photographic means for the preservation of evidence or the perpetuation of a record, and (2) the broadcasting, televising, recording, or photographing of investitive, ceremonial, or naturalization proceedings.

**(d)** The use of dictation equipment is permitted in the clerk's office of this court by persons reviewing files in that office.

**APPENDIX B**

A judge may authorize broadcasting, televising, recording, or taking photographs in the courtroom and in adjacent areas during investitive, naturalization, or other ceremonial proceedings. A judge may authorize such activities in the courtroom or adjacent areas during other proceedings, or recesses between such other proceedings, only:

(a) for the presentation of evidence;
(b) for the perpetuation of the record of the proceedings;
(c) for security purposes;
(d) for other purposes of judicial administration; or
(e) for the photographing, recording, or broadcasting of appellate arguments.

When broadcasting, televising, recording, or photographing in the courtroom or adjacent areas is permitted, a judge should ensure that it is done in a manner that will be consistent with the rights of the parties, will not unduly distract participants in the proceeding, and will not otherwise interfere with the administration of justice.

**APPENDIX C**

It is hereby resolved by the Judicial Council of the First Circuit, in response to the urging of the Judicial Conference of the United States at its March 1996 Meeting, to continue to bar the taking of photographs and radio and television coverage of proceedings in the United States district courts within the circuit, except as otherwise provided for ceremonial occasions.

**- Concurring Opinion Follows -**

**LIPEZ**, <u>Circuit Judge</u>, **concurring**. For the reasons set forth so clearly in Judge Selya's opinion, I agree with my colleagues that the district court palpably erred in its application of Local Rule 83.3 of the District of Massachusetts to the request of respondent Tenenbaum that Courtroom View Network be permitted to webcast the non-evidentiary motions hearing that was scheduled for January 22, 2009. Given the language of the rule, and the unmistakable grounding of that language in a policy adopted by the Judicial Conference of the United States, that request should have been denied.

However, this inescapable legal conclusion does not discredit the policy concerns that animated, at least in part, the district court's decision. Indeed, in my view, there are no sound policy reasons to prohibit the webcasting authorized by the district court. Therefore, this case calls into question the continued relevance and vitality of a rule that requires such a disagreeable outcome.

When the motions hearing at issue occurs, only those physically present in the courtroom will hear the parties debate the merits of the motions before the district court. Ironically, however, almost immediately after the oral argument in this First Circuit mandamus proceeding ended, anyone with an internet connection could access a recording of that argument from our website. There is no meaningful difference between the type of oral

-23-

argument that we make available to the public as a matter of course and the type of argument that would have been broadly accessible under the district court's Order.  See Capitol Records, Inc. v. Alaujan, 593 F. Supp. 2d 319, 322 (D. Mass. 2009) (limiting the applicability of the Order in this case permitting narrowcasting to a motion hearing that would have "involve[d] only legal argument"). There are significant losses in this discrepancy.

"Courts have long recognized 'that public monitoring of the judicial system fosters the important values of quality, honesty and respect for our legal system.'" In re Providence Journal Co., 293 F.3d 7, 9 (1st Cir. 2002) (quoting Siedle v. Putnam Inv., 147 F.3d 7, 10 (1st Cir. 1998)).  In our democratic society, "the knowledgeable tend to be more robustly engaged in public issues," and "[i]nformation received by direct observation is often more useful than that strained through the media.  Actually seeing and hearing court proceedings, combined with commentary of informed members of the press and academia, provides a powerful device for monitoring the courts." Hamilton v. Accu-Tek, 942 F. Supp. 136, 138 (E.D.N.Y. 1996).

Moreover, webcasting the legal arguments of counsel in a civil motions hearing does not implicate the concerns raised by televised trials.[1]  Many judges worry that the presence of cameras

_____

[1] Rule 53 of the Federal Rules of Criminal Procedure prohibits "the taking of photographs in the courtroom during judicial proceedings or the broadcasting of judicial proceedings from the

in the courtroom and the enhanced publicity that cameras bring changes the nature of the trial process itself. Those fears do not realistically apply to a civil motions hearing where the judge considers and responds to the arguments of counsel. Also, there is no reason to fear the impact of webcasting on any future jury trial in this case. Trial judges can assure the seating of a fair and impartial jury with the application of familiar jury selection practices.

The Local Rule at the center of this controversy was adopted in 1990. Since its adoption, dramatic advances in communications technology have had a profound effect on our society. These new technological capabilities provide an unprecedented opportunity to increase public access to the judicial system in appropriate circumstances. They have also created expectations that judges will respond sensibly to these opportunities. With its sweeping prohibition on the broadcasting or recording of district court proceedings, Local Rule 83.3 prevents such responses in civil cases. So too do the Policy of the Judicial Conference and the Resolution of the Judicial Council of the First Circuit that underlie the Local Rule. As the outcome of this proceeding demonstrates, the Rule, the Policy, and the Resolution should all be reexamined promptly.

---

courtroom." Fed. R. Crim. P. 53 (emphasis added).